DEERING MILLIKEN, INC., a Corporation, Appellee,

v.

Reed JOHNSTON, as Regional Director of the National Labor Relations Board, Appellant.

No. 8375.

United States Court of Appeals Fourth Circuit.

Argued June 12, 1961.

Decided Oct. 13, 1961.

James C. Paras, Atty., National Labor Relations Board, Washington, D. C. (Stuart Rothman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, and Marion L. Griffin, Atty., National Labor Relations Board, Washington, D. C., on brief), for appellant.

John R. Schoemer, Jr., New York City, and Thornton H. Brooks, Greensboro, N. C. (McLendon, Brim, Holderness & Brooks, Greensboro, N. C., and Townley, Updike, Carter & Rodgers, New York City, on brief), for appellee.

Before SOBELOFF, Chief Judge, and HAYNSWORTH and BOREMAN, Circuit Judges.

HAYNSWORTH, Circuit Judge.

This appeal is from an order of the District Court for the Middle District of North Carolina entered upon the application of Deering Milliken, Inc., enjoining the Regional Director of the National Labor Relations Board from proceeding with certain further hearings ordered by the Board. The injunction was predicated upon findings that a second remand order in an unfair labor practice case was in violation of the Board's duty to dispose of the case with reasonable dispatch and was arbitrary and oppressive.

The principal question on appeal is whether the District Court had jurisdiction to enter an injunctive order. We hold it did.

The administrative proceedings began in October 1956 with the filing of a

charge against Darlington Manufacturing Company, alleging that Darlington had committed unfair labor practices when it discontinued its operations and went into liquidation. On the basis of this charge, a complaint was issued by the General Counsel and hearings were had starting in January 1957.

In an Intermediate Report, dated April 30, 1957, the Trial Examiner concluded that there was economic reason for the liquidation, but that it was also motivated by a recent election among Darlington's employees held under the supervision of the Board. He recommended an order finding that Darlington had committed unfair labor practices, but recommending also that because of Darlington's cessation of business, there was no reinstatement remedy.[1]

During the 1957 hearings the Textile Workers Union of America made an offer to prove that Darlington Manufacturing Company was one of a chain of mills controlled by Deering Milliken & Co., Inc., a New York corporation, Darlington's sales representative. This offer of proof was rejected by the Trial Examiner.

On December 16, 1957, the Board, without passing upon the substantive question as to whether Darlington had committed an unfair labor practice, ordered a remand of the case for the purpose of receiving additional evidence along the lines suggested by the union's offer of proof. A majority of the Board thought that the inclusion of such evidence in the record would be desirable before consideration of the substantive issue. Two members of the Board dissented on the ground that the evidence did not bear on the substantive issue.

Preparatory to the hearings on remand, Deering Milliken & Co., Inc., which had then been made a party to the proceedings, made available for inspection by the General Counsel some 10,000 pages of records and documents, of which the General Counsel selected some 2600 pages for further analysis and possible use. At the further hearings some fourteen witnesses testified. Over 400 pages of exhibits were introduced, and over 2500 pages of testimony were taken. The preparation of one of these exhibits, at the request of the General Counsel of the Board, is alleged to have required nearly 400 man-hours of work by employees of Deering Milliken & Co., Inc.

During the remand hearings, extensive evidence was taken as to the relationship between Deering Milliken & Co., Inc. and Darlington, and there was frequent reference to other corporations alleged by the union to be members of a chain, of which Deering Milliken & Co., Inc. and Darlington were members. The proof showed that individual members of the Milliken family owned in the aggregate a majority of the stock of Deering Milliken & Co., Inc., of Darlington, and of certain other corporations, particularly The Cotwool Manufacturing Corporation, which owned and operated a number of textile manufacturing plants and which had subsidiary corporations owning and operating other textile manufacturing plants. The evidence discloses that the Millikens were not the only stockholders of these corporations, but it clearly establishes that, through ownership of a majority of the stock of each, they, as a group, exercised effective control of each of them. It also clearly establishes the fact, however, that Deering Milliken & Co., Inc. was itself engaged in no manufacturing operations, but was the sales representative of each of the manufacturing corporations controlled by members of the Milliken family through ownership of a majority of the outstanding stock.

1. Darlington's manufacturing operations had been completely discontinued, but the distribution of its assets in liquidation had not been completed. By a consent order, further distributions in liquidation to its stockholders were postponed, pending a final disposition of these proceedings. Darlington has assets available for the satisfaction of any back-pay award amounting to several hundred thousand dollars. In view of the long lapse of time, however, if all of the former employees of Darlington are entitled to back-pay for net wage losses from 1956 to the present time, the total award might exceed Darlington's remaining assets.

At the conclusion of the remand hearings, the General Counsel's representative requested that the record be held open in order that he might review the evidence with his superiors to be certain that enough of the available evidence to support the union's theory of a unitary organization had been offered. The request was granted and the record was held open for the requested period of time, but thereafter the hearings were closed without any effort on the part of the General Counsel or of the union to offer additional or supplemental evidence.

On December 31, 1959, the Trial Examiner filed a Supplemental Intermediate Report. This report examines in detail the relationship between Deering Milliken & Co., Inc. and Darlington. There is also in it much about the relationship of Deering Milliken & Co., Inc. and the other manufacturing corporations.

The Supplemental Intermediate Report concluded with a finding that Deering Milliken & Co., Inc. did not occupy a single employer status with Darlington and recommended dismissal of the complaint as to Deering Milliken & Co., Inc. The Supplemental Intermediate Report contains much language suggesting that, in the opinion of the Trial Examiner, much time and effort had been fruitlessly expended. Among other things, he stated in the report, "We have indeed labored but have brought forth not even a mouse." He expressed the opinion it was not "even remotely possible that employment [of former employees of Darlington] in the other mills will be directed."

Upon exceptions to the Supplemental Intermediate Report and the briefs of the parties, the case again came before the Board for decision in early 1960, more than two years after its first remand order. Nothing further was done, however, until January 9, 1961, when the union filed a motion to reopen the case and it was again remanded to the Trial Examiner for further hearings, again with two members of the Board dissenting.

The motion for another remand was based upon newspaper articles published in December 1960, which, the motion asserted, contained newly discovered evidence. These articles announced that Deering Milliken, Inc. had appointed a president of each of its three manufacturing divisions, its fine goods division, its worsted division, and its woolen division.[2] The affidavit accompanying the union's motion suggested that the announcement was inconsistent with the earlier contention of Deering Milliken & Co., Inc. that it was not engaged in manufacturing operations. The apparent inconsistency was emphasized by the fact that the newspaper articles listed the particular mills in each of the three divisions, many of which were referred to in the record made in the hearings on the first remand and which the Trial Examiner had found were not shown to have been controlled by Deering Milliken & Co., Inc.

In opposition to the motion to again reopen the case and remand it for a second time, an affidavit was filed in which it was stated that in June 1960 Deering Milliken & Co., Inc., the New York corporation which had been a party to these proceedings, had been merged into The Cotwool Manufacturing Corporation, a Delaware corporation, and that Cotwool's name had thereupon been changed to Deering Milliken, Inc. The record, of course, shows that Cotwool, controlled by the Milliken family through majority stock ownership, was extensively engaged in the textile manufacturing business in 1956, and the affidavit indicates it was still so engaged in 1960. In opposition to the motion to again reopen the case, it was contended that Cotwool's (now Deering Milliken, Inc.) appointment of executives of its manufacturing divisions was irrelevant to the question of whether the old sales corporation, Deering Milliken & Co., Inc., in 1956 controlled the manufacturing operations and labor policies of the mills for which it acted as sales representative.

2. A print cloth mill, such as Darlington was would not fall in any of these classifications.

Though the case had been then pending for many months before the Board for a decision on the substantive question, whether an unfair labor practice had been committed by Darlington, and though there had been a previous remand leading to prolonged and extensive hearings on the supplemental question of possible remedies in the event an unfair labor practice should be found to have been committed,[3] the Board again remanded the case for further hearings and testimony on the supplemental question of possible remedies. The remand is in broad terms, being:

"* * * for the purpose of taking newly discovered testimony and evidence relating to (1) the Deering, Milliken & Co., Inc. press release referred to in the aforesaid Affidavit, (2) the responsibility of Deering, Milliken & Co., Inc., either for the unfair labor practices of Darlington Manufacturing Company or to remedy those unfair labor practices and (3) such further evidence as may be deemed proper and appropriate under the circumstances."

Deering Milliken, Inc. then brought this action in the District Court seeking an injunction against the Regional Director of the Board to prohibit his holding further hearings pursuant to the second remand order. The District Court granted the injunction,[4] holding that except to the extent the hearings on remand were directed to the 1960 press release relating to the appointment of executives of divisions of the manufacturing company, the new hearings were directed to the same ground and for the same purpose as the extensive hearings on the previous remand, and that, to the extent of the exception, what the Delaware manufacturing corporation did in 1960 was entirely irrelevant to the control of manufacturing operations exercised by the New York sales corporation in 1956. The District Court was of the opinion that additional hearings on remand were purposeless and oppressive, and the remand order invalid.

The Board challenges the jurisdiction of the District Court to pass such an order and maintains that this is an indirect effort to obtain review in that court of an interlocutory Board action which the law makes ultimately reviewable only in the Court of Appeals after a final order.

The plaintiff, on the other hand, contends that this is not an effort to obtain "review" of the Board's action in the sense that that word is used in § 10(f) of the National Labor Relations Act, as amended.[5] Rather, it is a proceeding to enforce an obligatory provision of the Administrative Procedure Act in the manner authorized by that statute.

In § 6(a) of the Administrative Procedure Act,[6] it is specifically provided:

"* * * Every agency shall proceed with reasonable dispatch to conclude any matter presented to it except that due regard shall be had for

---

3. The substantive question, of course, is not before us. We are not prepared to, and do not, intimate any opinion upon it. If Darlington's conduct was plainly a violation of the Act, however, extensive hearings on the subject of available remedies prior to a formal declaration of an obvious violation would have greater justification. From all that presently appears, however, it is uncertain that the Board will ever conclude that Darlington committed an unfair labor practice. Such cases as Jays Foods, Inc. v. N. L. R. B., 7 Cir., 292 F.2d 317 indicate that a company does not violate the Act when it goes out of business, though the termination of its business is motivated in part by the organizational activities of employees. We do not suggest that we think the principle is valid or, if generally valid, necessarily applicable to the facts of this case. Those are questions for initial consideration by the Board. All that we suggest is that, on this record, the substantive question of the commission of an unfair labor practice by Darlington does not appear to be undebatable.

4. Deering Milliken, Inc. v. Johnston, D.C. M.D.N.C., 193 F.Supp. 741.

5. 29 U.S.C.A. § 160(f).

6. 5 U.S.C.A. § 1005(a).

the convenience and necessity of the parties or their representatives. * * * "

This is no precatory declaration. It is an enforceable command, made expressly so by § 10(e) of the Administrative Procedure Act,[7] which provides that the court "shall (A) compel agency action unlawfully withheld or unreasonably delayed; and (B) hold unlawful and set aside agency action, findings, and conclusions found to be (1) arbitrary, capricious, an abuse of discretion, or other-

wise not in accordance with law * * *; (3) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; * * *."

The jurisdiction of the federal courts to enjoin acts of a federal administrative agency in excess of the agency's statutory authority was recognized as early as 1902.[8] This recognition of the jurisdiction of the federal courts has carried through a long line of cases to the present time.[9] As a corollary of that

---

7. 5 U.S.C.A. § 1009(e).

8. American School of Magnetic Healing v. McAnnulty, 187 U.S. 94, 23 S.Ct. 33, 47 L.Ed. 90. As early as 1803, the Supreme Court, in Marbury v. Madison, 1 Cranch 137, 5 U.S. 137, 2 L.Ed. 60, had held that the courts had jurisdiction and power to issue an appropriate common law writ to compel a cabinet officer to perform a duty prescribed by the Constitution, though there was no provision for judicial enforcement of performance of the officer's duty. Generally, in the 19th century, however, there was judicial reluctance to recognize a right of judicial review of administrative action. Professor Davis suggests this reluctance may have been attributable to the fact that the concept of review restricted in scope had not been then developed. In any event, the McAnnulty case in 1902 is generally regarded as the first and leading exposition of the more modern approach to the jurisdictional question. See the cases cited in footnote 9, infra, in which the principle of the McAnnulty case is further developed and elaborated. See, generally, Davis, Unreviewable Administrative Action, 1954, 15 F.R.D. 411, 416; Jaffe, The Right to Judicial Review, 71 Harv.L.Rev. 401, 423 (1958). It has been suggested that there exists a presumptive right of judicial review of administrative action. Davis, id., Jaffe, id. Accord, United States v. Interstate Commerce Commission, 337 U.S. 426, 69 S.Ct. 1410, 93 L.Ed. 1451; Heikkila v. Barber, 345 U.S. 229, 73 S.Ct. 603, 97 L.Ed. 972; Harmon v. Brucker, 355 U.S. 579, 78 S. Ct. 433, 2 L.Ed.2d 503; Union Pacific Railroad Co. v. Price, 360 U.S. 601, 619, 79 S.Ct. 1351, 3 L.Ed.2d 1460 (dissenting opinion of Mr. Justice Douglas); Schilling v. Rogers, 363 U.S. 666, 677–678, 80 S.Ct. 1288, 4 L.Ed.2d 1478 (dissenting opinion of Mr. Justice Brennan); and see Administrative Procedure Act, Legislative History, S.Doc. No. 248, 79th Cong., 2 Sess., 275. Contra: Mr. Justice Frankfurter, dissenting, Stark v. Wickard, 321 U.S. 288, 311–315, 64 S.Ct. 559, 88 L.Ed. 733. Here, however, there is no need to resort to presumptions, for there is clear expression of congressional intention in the Administrative Procedure Act.

9. Noble v. Union River Logging Railroad Company, 147 U.S. 165, 13 S.Ct. 271, 37 L.Ed. 123; American School of Magnetic Healing v. McAnnulty, 187 U.S. 94, 23 S.Ct. 33, 47 L.Ed. 90; Interstate Commerce Commission v. Northern Pacific Railway Company, 216 U.S. 538, 30 S.Ct. 417, 54 L.Ed. 608; Philadelphia Company v. Stimson, 223 U.S. 605, 32 S.Ct. 340, 56 L.Ed. 570; Crowell v. Benson, 285 U.S. 22, 54–65, 52 S.Ct. 285, 76 L.Ed. 598; St. Joseph Stock Yards Co. v. United States, 298 U.S. 38, 52–59, 56 S. Ct. 720, 80 L.Ed. 1033; United States v. State of Idaho, 298 U.S. 105, 56 S.Ct. 690, 80 L.Ed. 1070; Morgan v. United States, 298 U.S. 468, 56 S.Ct. 906, 80 L.Ed. 1288; Shields v. Utah Idaho Central Railroad Co., 305 U.S. 177, 183, et seq., 59 S.Ct. 160, 83 L.Ed. 111; Utah Fuel Co. v. National Bituminous Coal Comm., 306 U.S. 56, 59–60, 59 S.Ct. 409, 83 L.Ed. 483; American Federation of Labor v. National Labor Relations Board, 308 U.S. 401, 60 S.Ct. 300, 84 L.Ed. 347 (dictum); Switchmen's Union of North America v. National Mediation Board, 320 U.S. 297, 300, 64 S.Ct. 95, 88 L.Ed. 61 (dictum); Stark v. Wickard, 321 U.S. 288, 306, et seq., 64 S.Ct. 559, 88 L.Ed. 733; Inland Empire District Council, Lumber & Sawmill Workers Union v. Millis, 325 U.S. 697, 65 S.Ct. 1316, 89 L. Ed. 1877; Board of Governors of the Federal Reserve System v. Agnew, 329 U.S. 441, 67 S.Ct. 411, 91 L.Ed. 408; United Public Workers of America v. Mitchell, 330 U.S. 75, 93, 67 S.Ct. 556, 91 L.Ed. 754; Williams v. Fanning, 332 U.S. 490, 68 S.Ct. 188, 92 L.Ed. 95; Hynes v. Grimes Packing Co., 337 U.S.

doctrine,[10] it has long been recognized that a federal court, upon complaint of an injured party, has jurisdiction to compel administrative action wrongfully withheld in violation of a statutory duty to act.[11]

This jurisdiction of the federal courts, of course, is not absolute. It exists only for the protection of those statutory rights which Congress intended to be judicially enforceable,[12] and for which there is no other adequate administrative or judicial remedy.[13]

■ Whether or not the Congress intended judicial enforcement of a particular statutory command is not conclusively answered by the absence of any specific statutory remedy.[14] The courts have al-

86, 96, 69 S.Ct. 968, 93 L.Ed. 1231; United States v. Interstate Commerce Commission, 337 U.S. 426, 69 S.Ct. 1410, 93 L.Ed. 1451; Joint Anti-Fascist Refugee Committee v. McGrath, 341 U.S. 123, 71 S.Ct. 624, 95 L.Ed. 817; Radio Corporation of America v. United States, 341 U.S. 412, 422–423, 71 S.Ct. 806, 95 L.Ed. 1062; Riss & Co., Inc. v. United States, 341 U.S. 907, 71 S.Ct. 620, 95 L.Ed. 1345, reversing per curiam D.C., 96 F.Supp. 452; and see United States v. L. A. Tucker Truck Lines, Inc., 344 U.S. 33, 38, 73 S.Ct. 67, 97 L.Ed. 54; Brannan v. Stark, 342 U.S. 451, 72 S.Ct. 433, 96 L.Ed. 497; Youngstown Sheet & Tube Co. v. Sawyer, 343 U.S. 579, 72 S.Ct. 863, 96 L.Ed. 1153; Heikkila v. Barber, 345 U.S. 229, 73 S.Ct. 603, 97 L.Ed. 972; Rubinstein v. Brownell, 346 U.S. 929, 74 S.Ct. 319, 98 L.Ed. 421, affirming by an equally divided court, 92 U.S.App. D.C. 328, 206 F.2d 449; Shaughnessy v. Pedreiro, 349 U.S. 48, 75 S.Ct. 591, 99 L.Ed. 868; Whitehouse v. Illinois Central Railroad Co., 349 U.S. 366, 75 S.Ct. 845, 99 L.Ed. 1155; Leedom v. International Union of Mine, Mill & Smelter Workers, 352 U.S. 145, 77 S.Ct. 154, 1 L.Ed.2d 201; Brownell v. We Shung, 352 U.S. 180, 77 S.Ct. 252, 1 L.Ed.2d 225; Leedom v. Kyne, 358 U.S. 184, 79 S.Ct. 180, 3 L.Ed.2d 210; Schilling v. Rogers, 363 U.S. 666, 676–678, 80 S.Ct. 1288, 4 L.Ed.2d 1478.

10. Noble v. Union River Logging Railroad Company, 147 U.S. 165, 13 S.Ct. 271, 37 L.Ed. 123.

11. Marbury v. Madison, 1 Cranch 137, 5 U.S. 137, 2 L.Ed. 60; Kendall v. United States ex rel. Stokes, 12 Pet. 524, 608, 37 U.S. 524, 608, 9 L.Ed. 1181; United States v. Schurz, 12 Otto 378, 102 U.S. 378, 26 L.Ed. 167; Roberts v. United States, 176 U.S. 221, 20 S.Ct. 376, 44 L.Ed. 443; Garfield v. People ex rel. Goldsby, 211 U.S. 249, 29 S.Ct. 62, 53 L.Ed. 168; Interstate Commerce Commission v. United States ex rel. Humbolt Steamship Company, 224 U.S. 474, 484–485, 32 S.Ct. 556, 56 L.Ed. 849; Lane v. Hoglund, 244 U.S. 174, 37 S.Ct. 558,

61 L.Ed. 1066; United States ex rel. Louisville Cement Company v. Interstate Commerce Commission, 246 U.S. 638, 38 S.Ct. 408, 62 L.Ed. 914; Kansas City Southern Railway Company v. Interstate Commerce Commission, 252 U.S. 178, 40 S.Ct. 187, 64 L.Ed. 517; Work v. United States ex rel. Rives, 267 U.S. 175, 45 S.Ct. 252, 69 L.Ed. 561; Wilbur v. United States ex rel. Kadrie, 281 U.S. 206, 50 S.Ct. 320, 74 L.Ed. 809; Federal Communications Commission v. Pottsville Broadcasting Co., 309 U.S. 134, 60 S.Ct. 437, 84 L.Ed. 656; Service v. Dulles, 354 U.S. 363, 77 S.Ct. 1152, 1 L.Ed.2d 1403; Harmon v. Brucker, 355 U.S. 579, 78 S.Ct. 433, 2 L.Ed.2d 503; Panama Canal Co. v. Grace Line, Inc., 356 U.S. 309, 318, 78 S.Ct. 752, 2 L.Ed.2d 788.

12. Leedom v. Kyne, 358 U.S. 184, 79 S.Ct. 180, 3 L.Ed.2d 210; Stark v. Wickard, 321 U.S. 288, 64 S.Ct. 559, 88 L.Ed. 733.

13. Leedom v. Kyne, 358 U.S. 184, 79 S.Ct. 180, 3 L.Ed.2d 210; Stark v. Wickard, 321 U.S. 288, 64 S.Ct. 559, 88 L.Ed. 733; Switchmen's Union of North America v. National Mediation Board, 320 U.S. 297, 300, 64 S.Ct. 95, 88 L.Ed. 61 (dictum); American Federation of Labor v. National Labor Relations Board, 308 U.S. 401, 60 S.Ct. 300, 84 L.Ed. 347 (dictum); Utah Fuel Co. v. National Bituminous Coal Comm., 306 U.S. 56, 59 S.Ct. 409, 83 L.Ed. 483; Shields v. Utah Idaho Central Railroad Co., 305 U.S. 177, 59 S.Ct. 160, 83 L.Ed. 111; American School of Magnetic Healing v. McAnnulty, 187 U.S. 94, 23 S.Ct. 33, 47 L.Ed. 90.

14. Leedom v. Kyne, 358 U.S. 184, 79 S.Ct. 180, 3 L.Ed.2d 210; Harmon v. Brucker, 355 U.S. 579, 78 S.Ct. 433, 2 L.Ed.2d 503; Service v. Dulles, 354 U.S. 363, 77 S.Ct. 1152, 1 L.Ed.2d 1403; Brownell v. We Shung, 352 U.S. 180, 77 S.Ct. 252, 1 L.Ed.2d 225; Leedom v. International Union of Mine, Mill & Smelter Workers, 352 U.S. 145, 77 S.Ct. 154, 1 L. Ed.2d 201; Shaughnessy v. Pedreiro, 349 U.S. 48, 75 S.Ct. 591, 99 L.Ed. 868; Rubinstein v. Brownell, 346 U.S. 929, 74 S.

ways been able to fashion remedies to prohibit agency action in violation of a statutory requirement, if a failure of enforcement would occasion a defeat of the apparent congressional purpose.[15]

The explicit provision of § 10(e) of the Administrative Procedure Act, that the courts shall compel agency action unlawfully withheld or unreasonably delayed, is an affirmative statutory declaration of the congressional purpose that the requirement in § 6 of that Act, that agency action be concluded with reasonable dispatch, gives rise to legally enforceable rights of the parties to the proceeding. Its formally declared intention is fully supported by the legislative history. The committee report in the Senate [16] said that the requirement that agencies proceed with reasonable dispatch to conclude the matter presented is a "legal requirement" that an agency shall not deny relief or fail to conclude a case by mere inaction. Of the same requirement, the report of the committee in the House [17] says that no agency "shall in effect deny relief or fail to conclude a case by mere

inaction, or proceed in a dilatory fashion to the injury of the person concerned. No agency should permit any person to suffer injurious consequences upon unwarranted official delay."

Senator McCarran, the author of the bill which became the Administrative Procedure Act, on the floor of the Senate explained that the bill conferred no administrative powers, but provided definitions of, and limitations upon, administrative action, to be interpreted and applied by the agencies in the first instance, but to be enforced by the courts in the final analysis.[18] In answer to a specific question from the floor, Senator McCarran replied that it was the intention of the bill, in the absence of any other adequate, available remedy, to give a party injured by a violation of one of the terms of the bill, the right of enforcement by the extraordinary remedies of injunction, prohibition and quo warranto.

We conclude that, under § 10(e) of the Administrative Procedure Act, the courts have the right and the duty

Ct. 319, 98 L.Ed. 421; Heikkila v. Barber, 345 U.S. 229, 73 S.Ct. 603, 97 L.Ed. 972; Riss & Co., Inc. v. United States, 341 U.S. 907, 71 S.Ct. 620, 95 L.Ed. 1345; United States v. Interstate Commerce Commission, 337 U.S. 426, 69 S.Ct. 1410, 93 L.Ed. 1451; Hynes v. Grimes Packing Co., 337 U.S. 86, 69 S.Ct. 968, 93 L.Ed. 1231; Board of Governors of the Federal Reserve System v. Agnew, 329 U.S. 441, 67 S.Ct. 411, 91 L.Ed. 408; Switchmen's Union of North America v. National Mediation Board, 320 U.S. 297, 64 S.Ct. 95, 88 L.Ed. 61; Stark v. Wickard, 321 U.S. 288, 64 S.Ct. 559, 88 L.Ed. 733; American Federation of Labor v. National Labor Relations Board, 308 U.S. 401, 60 S.Ct. 300, 84 L.Ed. 347; Utah Fuel Co. v. National Bituminous Coal Comm., 306 U.S. 56, 59 S.Ct. 409, 83 L.Ed. 483; Shields v. Utah Idaho Central Railroad Co., 305 U.S. 177, 59 S.Ct. 160, 83 L.Ed. 111; Virginian Railway Co. v. System Federation No. 40, Railway Employees Department of the American Federation of Labor, 300 U.S. 515, 57 S.Ct. 592, 81 L.Ed. 789; Texas & New Orleans Railroad Company v. Brotherhood of Railway & Steamship Clerks, 281 U.S.

548, 568–570, 50 S.Ct. 427, 74 L.Ed. 1034; United States ex rel. Kansas City Southern Railway Company v. Interstate Commerce Commission, 352 U.S. 178, 40 S.Ct. 187, 64 L.Ed. 517; United States ex rel. Louisville Cement Company v. Interstate Commerce Commission, 246 U.S. 638, 38 S.Ct. 408, 62 L.Ed. 914; Interstate Commerce Commission v. United States ex rel. Humbolt Steamship Company, 224 U.S. 474, 32 S.Ct. 556, 56 L.Ed. 849.

15. Texas & New Orleans Railroad Company v. Brotherhood of Railway & Steamship Clerks, 281 U.S. 548, 568–570, 50 S.Ct. 427, 74 L.Ed. 1034; Virginian Railway Co. v. System Federation No. 40, Railway Employees Department of the American Federation of Labor, 300 U.S. 515, 57 S.Ct. 592, 81 L.Ed. 789; Stark v. Wickard, 321 U.S. 288, 64 S.Ct. 559, 88 L.Ed. 733.

16. Administrative Procedure Act, Legislative History, S.Doc. No. 248, 79th Cong., 2d Sess., 204–205.

17. Legislative History, 263–264.

18. Legislative History, 326–327, 217, 278–279, 281–282.

to enforce the Act's requirement that the Board proceed with reasonable expedition.

The Board contends, however, that the provisions of § 10(e) and (f) of the National Labor Relations Act provide methods of reviewing final orders of the Board which are exclusive. The existence of the particular method of review is said to foreclose resort to the general jurisdiction of the district courts.

This contention has validity only so long as the particularized method of review is adequate for the protection of the asserted statutory right. The case would present no problem if review of Board action under § 10(f) of the National Labor Relations Act was adequate and appropriate for enforcement of the plaintiff's right to have the Board conclude these proceedings with reasonable dispatch. The Administrative Procedure Act in § 10(b) specifically provides that other remedies are available only when a "special statutory review proceeding" is not available or is inadequate. If the § 10(f) proceeding under the National Labor Relations Act is inadequate to protect the plaintiff's right, however, the district court had jurisdiction to enforce the right.

In Leedom v. Kyne, 358 U.S. 184, 79 S.Ct. 180, 3 L.Ed.2d 210, the Supreme Court held that review proceedings under the National Labor Relations Act were inadequate for the protection of the right of professional employees to have non-professional employees excluded from their bargaining unit.[19] Upon that premise, the Supreme Court clearly held that the professional employees, through their representative, properly invoked the jurisdiction of the district court for the vindication of the right Congress had conferred upon them.

The decision in Leedom v. Kyne was foreshadowed by what was said in Amer-

ican Federation of Labor v. National Labor Relations Board, 308 U.S. 401, 405, 412, 60 S.Ct. 300, 84 L.Ed. 347, and in Switchmen's Union of North America v. National Mediation Board, 320 U.S. 297, 300, 64 S.Ct. 95, 88 L.Ed. 61.[20] In each of those cases, the Court was careful to distinguish its holding from a case in which a statutory right could not be adequately enforced by a particular method of review provided with respect to the decisions of the agency involved. The situation which was reserved and excepted in those two cases, confronted the Court in Leedom v. Kyne. It is the same situation which meets us here. Our conclusion is controlled by Leedom v. Kyne.

We think that § 10(f) of the National Labor Relations Act does not provide an adequate remedy for enforcement of the right asserted here. The delay of which the plaintiff complains is not an order granting or denying relief within the meaning of that section. There is no right of review under § 10(f) of the National Labor Relations Act until the Board finally shall have acted upon the merits of the case and entered a final order granting or denying relief. There can be no review under § 10(f) of the National Labor Relations Act until the delay of which the plaintiff complains shall have come to a final end by reason of the Board's own volition. Should the Board neglect to act for years yet to come, the plaintiff could not seek an end to the delay through a proceeding under § 10(f) of the National Labor Relations Act. Enforcement of the right to have the proceeding brought to a conclusion with reasonable dispatch requires the availability of a remedy at a time when the court's order can bear upon the delay and bring it to a conclusion before the erring agency chooses to terminate its own default in the performance of its statutory duty.

19. Review of the bargaining unit determination under the National Labor Relations Act was not entirely unavailable to the protesting professional employees, see note on Leedom v. Kyne, 73 Harv. L.Rev. 84, 219, though such review may have been inadequate.

20. See Inland Empire District Council, Lumber & Sawmill Workers Union, Lewiston, Idaho v. Millis, 325 U.S. 697, 65 S.Ct. 1316, 89 L.Ed. 1877.

In the particular context of this case, the Board says that a court in a proceeding under § 10(f) of the National Labor Relations Act could relieve the plaintiff of the legal burden of the delay, if unreasonable delay were found to have occurred, by excluding from consideration all evidence taken in hearings pursuant to the second remand order. The plaintiff, however, asserts no right to the exclusion of relevant evidence. The right it asserts is to have the proceeding brought to a conclusion with reasonable promptness. Its attack upon the second remand order is essentially that the remand is the means by which further delay will be accomplished without any material addition to the records previously made in the original hearings and upon the first remand. If, as the plaintiff contends, extensive hearings on the second remand can produce no material evidence not already of record, exclusion from consideration of irrelevant and cumulative evidence in a proceeding under § 10(f) of the National Labor Relations Act would be a futile sanction by which to procure enforcement of the Board's duty to act without unreasonable delay.

For enforcement of the plaintiff's right under § 6 of the Administrative Procedure Act, a proceeding under § 10(f) of the National Labor Relations Act is at least as inappropriate as it was to the protection of the rights of the professional employees in Leedom v. Kyne. Here, as there, this is not an action to "review" a decision of the Board made in the exercise of its jurisdiction. It is, instead, an action to prohibit Board violation of a prohibition of the Administrative Procedure Act.

The Board next contends that under the Administrative Procedure Act, interlocutory and procedural acts of the Board are not subject to review, except in connection with the review of a board order determining the rights of the parties.

Indeed, § 10(c) of that Act does make reviewable "every final agency action for which there is no other adequate remedy in any court * * *." That Section further provides that preliminary, procedural or intermediate agency action, not directly reviewable, may be reviewed in connection with the review of a final order.

The "final agency action" made reviewable under § 10(c) of the Administrative Procedure Act need not necessarily be read as synonymous with "a final order of the Board granting or denying in whole or in part the relief sought * * *" made reviewable under § 10(f) of the National Labor Relations Act. " 'Finality' is not * * * a principle inflexibly applied."[21] Delay, so long as it continues and so long as there is any vestige of a right which will suffer further impairment by an extension of the delay, may not be final in the usual sense of that word, but when it amounts to a violation of § 6(a) of the Administrative Procedure Act and to a legal wrong within the meaning of § 10(a) of that Act, it is final action within the meaning of § 10(c).

The Committees on the Judiciary of both the House and the Senate included in their reports[22] a statement that " 'final' action includes any effective agency action for which there is no other adequate remedy in any court." It is true that no such definition of "final action" was included in the Act, itself, but the provision of § 10(e) authorizing the courts to compel agency action unreasonably delayed, makes it plain that the word was used in that sense in § 10(c). If there were no right of review until the agency finally terminated the proceeding before it, a court could never take the action authorized in § 10(e). We thus construe "final action" as used in § 10(c) of the Administrative Procedure Act, in the

21. Mr. Justice Frankfurter concurring in Joint Anti-Fascist Refugee Committee v. McGrath, 341 U.S. 123, 156, 71 S.Ct. 624, 640, 95 L.Ed. 817. See, also, his discussion of the varying senses in which

the word "final" is employed, footnote 4, p. 154 of 341 U.S., at page 639 of 71 S. Ct. And see Heikkila v. Barber, 345 U.S. 229, 233, 73 S.Ct. 603, 97 L.Ed. 972.

22. Legislative History, 213, 277.

light of the provisions of §§ 10(a) and 10(e), to mean what the Committees said it meant. When a party suffers a legal wrong from continuing agency delay and, as here, there is no other adequate administrative or judicial remedy, the delay is final agency action for which § 10 of the Administrative Procedure Act does provide an effective remedy.[23]

■■ Though the Board relies heavily on Myers v. Bethlehem Shipbuilding Corp., 303 U.S. 41, 58 S.Ct. 459, 82 L.Ed. 638, and frames much of its argument in terms of the exhaustion of remedies doctrine, there is no such problem here. It is well established, of course, that available administrative remedies must generally be exhausted before resort to the courts. When the Congress has created an administrative tribunal and has provided that certain issues should be initially triable in proceedings conducted before that tribunal, a party to such a proceeding has no right to ignore it and have the issue tried initially in a district court. Myers v. Bethlehem Shipbuilding Corp. is a typical application of the doctrine.

Here, however, there is no available administrative remedy. If hearings are held before a trial examiner pursuant to the second remand order, the plaintiff will have no right to attack there the propriety of the Board's action in again remanding the case. Nor will it there have any effective right to assert its contention that the second remand order and the holding of extended additional hearings pursuant to it constitute a present denial of its rights under § 6 of the Administrative Procedure Act. Indeed, the Board does not here contend that there is any administrative remedy available to the plaintiff for the protection of the right asserted. It contends only that the right may be ultimately asserted, after the delay is done, in a review proceeding under §§ 10(e) or (f) of the

National Labor Relations Act. Those are judicial remedies which we have already found inadequate for the protection of the asserted right, and for that reason, their existence does not foreclose invocation of the general jurisdiction of the district court.

■ We conclude, therefore, that the District Court had jurisdiction of this controversy and that the plaintiff was not precluded from turning to that court for the protection of its right, since there was no available administrative remedy to make applicable the principle requiring prior exhaustion of such remedies.

It is next contended by the defendant, that the individual members of the Board are indispensable parties. Under § 5 of the National Labor Relations Act, 29 U.S.C.A. § 155, the individual members have an official residence in the District of Columbia, where they may be sued. They were not within the territorial jurisdiction of the Middle District of North Carolina and the plaintiff has made no attempt to make them formal parties to this action.

The Board, however, had remanded this case to its Regional Director, the defendant in this action. While he acts under the Board's direction, it is he who, unless effectively enjoined by the Court, will schedule and arrange for the conduct of the hearings of which the plaintiff complains.

It is true that in this action the court could not affirmatively order individual members of the Board to proceed without further hearings or further delay to decide the case on the merits. The plaintiff's theory, however, is that the occasion for the delay and the cause of its indefinite continuance into the future is the pendency of the further hearings under the Board's second remand order. If the cause of the delay is removed, this Court assumes, as apparently does the plaintiff, that the Board will not neglect

23. In Atlantic & Gulf Stevedores, Inc. v. Donovan, 5 Cir., 274 F.2d 794, 802, the court had no difficulty in concluding that the requirement that an agency proceed with reasonable dispatch was enforceable in a District Court by a mandatory injunction. See, also, Dolcin Corp. v. Federal Trade Commission, 94 U.S.App. D.C. 247, 219 F.2d 742, 746.

its duty to exercise with reasonable dispatch its powers of decision. Presently the pendency of the additional hearings is an obstacle to the Board's conclusion of the proceeding without further undue delay. Removal of that obstacle is all that the plaintiff seeks in this action.

▆ The superior officers, the individual members of the Board, would be indispensable parties here only if the decree undertook to require them to act to bring these proceedings to a conclusion. The decree operates only on the Regional Director, a subordinate officer. By its operation upon the Regional Director, the decree may be made fully effective to remove the present cause of continuing delay in the disposition of the proceeding. Since the relief the plaintiff seeks and the decree of the court require nothing affirmatively of the members of the Board, it is well settled that they are not indispensable parties. Williams v. Fanning, 332 U.S. 490, 68 S.Ct. 188, 92 L.Ed. 95; Hynes v. Grimes Packing Co., 337 U.S. 86, 69 S.Ct. 968, 93 L.Ed. 1231.

▆ Finally, we think the facts justify the finding of the District Court that the second remand order will cause unreasonable delay and that its injunctive order was justified by the facts insofar as it prohibits a retrial of the supplemental question so extensively retried as a result of the first remand order.

The administrative proceedings approach their fifth anniversary. The charge which put the Board's processes in motion was filed in October 1956. The case proceeded without unreasonable delay to a hearing on the substantive issue and to the completion of the Intermediate Report, which was filed on April 30, 1957, approximately six months after the filing of the charge. In the more than four years which have since intervened, the only activity in the proceeding has been concerned with the supplemental question of the availability of specific remedies. Over two years elapsed between the date of the first remand order on December 16, 1957 and the filing of the Supplemental Intermediate Report on December 31, 1959.[24] When, however, the majority of the Board again remanded the case on January 9, 1961, more than three years after its first remand order, it necessarily postponed its coming to grips with the issue before it until, after further hearings, another Supplemental Intermediate Report should be prepared and filed, and the parties given an opportunity to file exceptions to the Second Supplemental Intermediate Report and prepare and file arguments with the Board. If there should be a retrial of the supplemental issue already tried pursuant to the first order of remand, as the second remand order apparently contemplates, ultimate decision is postponed by the second remand order, for many months if not for many years. It is this prospective delay of which the plaintiff complains and which justified the District Court's finding that the Board's remand order was a violation of its duty to proceed with reasonable dispatch to conclude the proceedings.

There are no absolute standards by which it may be determined whether a proceeding is being advanced with reasonable dispatch. What is reasonable can be decided only in the light of the nature of the proceedings and the general and specific problems of the agency in discharging its functions and duties. Everyone cannot be given prompt and immediate hearings by an administrative tribunal which has a caseload beyond its capacity to process promptly. Statements of officials of the Board before the Subcommittee of the House Labor Com-

---

24. Apparently most of this two-year period was expended in preparation for the hearings required by the Board's remand order, and in the conduct of the actual hearings. The Supplemental Intermediate Report was completed by the Trial Examiner and filed within a reasonable time after the record on those hearings was finally closed. It is not suggested that the Trial Examiner or any other official was dilatory in advancing the supplementary proceedings directed by the Board. It is suggested that the supplemental issue was extensively prepared and tried in a protracted hearing during that two-year period.

mittee on May 8, 1961, Part 2 of CCH Labor Law Reports No. 45 May 18, 1961, disclose the great increase in the caseload and the consequent difficulties which confront the Board in keeping abreast of its work. Unavoidable delay in the disposition of cases, when there is a greatly excessive caseload, is compounded, however, by unnecessary remands for further hearings. Here the Union has asked for additional hearings, and could hardly complain of the resulting delay, but the employer has not asked for them and is entitled to question their reasonableness. In this it derives some comfort from the fact that two members of the Board dissented from each of the remand orders.

The Board has a broad discretion in controlling its administrative procedures. In remanding undecided cases for further hearings, it is not necessarily restricted by the rules governing motions in courts for new trials based upon after discovered evidence. No one suggests, for instance, that it was not within the Board's power and discretion to remand the case for the first time for the purpose of obtaining evidence on the supplemental question, and we think a court should not interfere with the Board's processes to the extent that, in any view, additional hearings and additional evidence might have been reasonably regarded by the Board as of assistance to its administrative procedures and not unduly oppressive.

The Board's discretion is not unfettered, however. The employer's rights under § 6 of the Administrative Procedure Act cannot be ignored. Under that Act, the employer should be free from required participation in supplemental hearings which are repetitive, purposeless, and oppressive, when the conduct of the hearings constitutes a failure to conclude the proceedings with reasonable dispatch.

What is required is some balance between the interest of the Board, of the Union, and of the employer. It should be recognized, on the one hand, that the court should not interfere with any reasonable exercise of the Board's discretion in controlling the progress of the proceedings pending before it. On the other hand, adequate protection of the employer's rights should be afforded.

With these considerations in mind, we think the injunctive order of the District Court went too far when it prohibited the holding of hearings on the question of whether, and when, the old New York corporation, Deering Milliken & Co., Inc., was merged into the Delaware corporation, The Cotwool Manufacturing Corporation. We may agree with the District Judge that the relevance of such inquiry is dubious, but, while the Board's pleading in the District Court was a technical admission, for the purpose of this action, of the truth of the facts respecting the merger as set forth in the complaint, there may be good reason why the actual facts respecting that transaction should be made a matter of record before the Board. Such reason may arise because there is nothing to indicate the Union has accepted as true the facts set forth in the employer's affidavit and because the Union originally drew a different inference from the press release of December 1960. The facts respecting the issuance of that press release and the claimed merger are the kind of facts which quickly and easily may be incorporated in the record. Neither the hearings to develop them nor the preparation of an intermediate report containing the Trial Examiner's findings with respect to them, and their bearing, if any, upon earlier findings and conclusions of the First Supplemental Intermediate Report, need occasion a great time lapse. The conduct of hearings as to these matters, if such hearings may be promptly undertaken, would impose no undue additional burden upon the employer, and it may serve a proper purpose of permitting the Board to complete a record upon which it may act. At least, we think the District Court should have deferred to the Board's exercise of its discretion to inquire into these particular matters, provided a hearing may be opened and concluded promptly.

On the other hand, the remainder of the Board's remand order is so unspecific and broad that it lends justification to the fears of the plaintiff in this action that hearings lasting weeks and months, and costing many thousands of dollars, may be required to replow the same ground covered in the hearings on the first remand. This, we think would impose undue additional delay, in the light of the overly long pendency of these proceedings already, amounting to a failure to bring these proceedings to a conclusion with reasonable dispatch. To the extent, therefore, that the order of the District Court prohibits further hearings on the second remand directed to the issue occasioning the first remand, or any other unspecific matter, we think the District Court's action was justified by the record.

As we think that the Board should be allowed to make the facts respecting the merger of Deering Milliken & Co., Inc. into Cotwool, matters of record before the Board, we are not unconscious of the possibility that there may be some other specific line of inquiry which may be accomplished easily and without delay with some expectation that it may facilitate ultimate Board disposition of the administrative proceeding without imposing additional burdens upon the parties. While no such specific inquiry, apart from the merger of Deering Milliken & Co., Inc. into Cotwool, is suggested by the remand order, we think it appropriate that the District Court should retain jurisdiction of the matter to the end that it may entertain promptly any subsequent application for additional orders or for specific modification of its decree, not inconsistent with the views expressed in this opinion.

To those ends, the case will be remanded to the District Court with instructions to modify its order to permit the facts respecting the press release of December 1960 and the merger of Deering Milliken & Co., Inc. into Cotwool to be made matters of record before the Board, provided that may be promptly accomplished, and for further proceedings and orders as may be appropriate and not inconsistent with this opinion.

Remanded.