**LOWER KENSINGTON CIVIC ASSOCIATION, a Pennsylvania nonprofit corp., et al.,**

v.

**Goldie WATSON, individually and in her capacity as head of the Model Cities Program for the City of Philadelphia, et al.**

**Civ. A. No. 71–1993.**

United States District Court, E. D. Pennsylvania.

Aug. 30, 1971.

Alan Edward Casnoff, Philadelphia, Pa., for plaintiffs.

James L. Pie, Philadelphia, Pa., William F. Hall, Jr., Philadelphia, Pa., for HUD.

Malcolm Lazin, Philadelphia, Pa., for the Government.

Abe Lapowsky, Philadelphia, Pa., for Pflaummer.

## MEMORANDUM OPINION

WEINER, District Judge.

This is an action in the nature of a mandamus, 28 U.S.C. § 1361 seeking to enjoin an election for council members in a Model Cities Neighborhood Council #3 scheduled for September 2, 1971. In response, the Department of Housing and Urban Development (HUD) and the Administrator of Model Cities Program for the City of Philadelphia have moved to dismiss on the ground that the complaint fails to state a cause of action upon which relief can be granted.

Predicated upon the stipulation of counsel for HUD and MODEL CITIES and counsel for the plaintiffs and the testimony adduced at an evidentiary hearing the following facts were established:

(a) The individual plaintiffs are residents of the Philadelphia Model Cities Area #3, which is bounded by Columbia Avenue on the North, East to Front Street, South to Poplar Street, West to Fifth Street and North to Columbia Avenue.

(b) On or about August 11, 1970, an election for positions on Neighborhood Council #3 was held.

(c) 643 individuals voted in this election.

(d) 158 non-residents of Area #3 who were employed in said area voted. Of this number 85 were employed by William H. Pflaummer and Sons, Inc.

(e) The policies and procedures for neighborhood Council elections as promulgated by the Philadelphia Administrator of Model Cities in relevant part provides:

"All persons who reside or are employed in the Neighborhood Council area shall be eligible to vote. However, no person may vote in more than one Neighborhood Council".

(f) On October 26, 1970, Neighborhood Council #3 requested that the Model Cities Administrator issue a directive which would in effect prevent non-resident neighborhood employees from voting. The Administrator, in turn, forwarded this request to HUD. In reply, the Administrator was advised that:

" * * * The Department of Housing and Urban Development has done considerable research in conjunction with the Office of Employment Opportunity to develop the policy questioned. We feel it justifiable that both persons who reside in the Model Neighborhood and non-resident persons employed in the Model Neighborhood should have a right to participate in the Model Cities Program, which includes elections. * * * This policy is in effect in all Model Cities programs in the country".

(g) The defendants have submitted the affidavit of Floyd H. Hyde, Assistant Secretary for Community Development wherein he affirms that:

" * * * To allow non-resident employees of the Model Neighborhood to vote for representatives on neighborhood councils is consistent with De-

partment of Housing and Urban Development policy".

(h) The next election for Council #3 will be held on September 2, 1971.

Turning now to the main prong of plaintiffs' attack, they argue that the Model Cities policy of permitting non-residents who are employed in the neighborhood to vote is in violation of the "citizen participation" concept as used in the Demonstration Cities and Metropolitan Development Act of 1966[1], as amended and/or of the HUD regulations. A brief review of the statute is a necessary prelude to our determination of this issue. Section 3303(b) (1) requires that the Secretary "shall (1) emphasize local initiative in the planning, development, and implementation of comprehensive city demonstration programs". Section 3303(a) (2) in relevant part provides that "(a) a comprehensive city demonstration program is eligible for assistance (under the Act) only if—* * *" "(2) the program is of sufficient magnitude to make a substantial impact on the physical and social problems * * * and to provide wide-spread citizen participation in the program, maximum opportunities for employing residents of the area in all phases of the program, and enlarged opportunities for work and training".

The Court's analysis of the legislative history of the Act,[2] implemented by the provisions of 3303(a) (2), impels a conclusion that it was the manifest intent of Congress to cloak the Secretary with authority to establish programs to effectuate the purpose of the statute. The Secretary interpreted the Congressional mandate to effect wide-spread citizen participation to give "(a) An opportunity for those who live and work in the neighborhood to identify problems, issues, goals, and priorities as they perceive them and (b) an opportunity for residents to influence the decision making process by early and continuing involvement in planning, monitoring, and evaluation of the model cities program [3]".

Relying upon the Secretary's directive, the Administrator determined that non-resident employees were eligible to vote in elections for neighborhood council.

The plaintiffs contend that CDA letter 10B is restrictive in that it permits non-resident employees to suggest and advise a duly elected council, however, they contend that only residents of the neighborhood area are eligible to cast an elective ballot. In support of their position the plaintiffs have cited several cases, all of which have established the principle that area residents must be given the opportunity to participate fully in City decisions affecting their area. North City Area-Wide Council v. Romney, 428 F.2d 754, 756 (3d Cir. 1970); Coalition for United Community Action v. Romney, 316 F.Supp. 742, 756 (N.D. Ill.1970). However, neither case reached the question of non-resident employees. The authority of residents to vote is not challenged in the case at bar.

█ Initially, we find that this Court has jurisdiction over the subject matter of the instant complaint. Section 702 of the Administrative Code provides:

"A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof."

See: Abbott Laboratories v. Gardner, 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967); Deering Milliken, Inc. v. Johnston, 295 F.2d 856 (4th Cir. 1961).

---

1. 42 U.S.C. § 3301 et seq.

2. Hearings before the Housing Subcommittee of the Committee on Banking and Currency, U.S. Senate, 89th Cong. 2nd Sess., pp. 32, 100. See also H.R.Rep.No.

1931, 89th Cong. 2nd Sess. 14 (1966) (2), U.S.Code Cong. & Admin.News, p. 3999.

3. HUD regulation, set forth in CDA letter No. 10 B. Exhibit B of plaintiffs complaint.

**1260**

This leads us to the dispositive issue in this case. In Thorpe v. Housing Authority, 393 U.S. 268, 276, 89 S.Ct. 518, 523, 21 L.Ed.2d 474 (1969) the Court, in the course of its opinion, observed:

"As we stated in Bowles v. Seminole Rock [& Sand] Co., 325 U.S. 410, 414, [65 S.Ct. 1215, 89 L.Ed. 1700] (1945), when construing an administrative regulation, 'a court must necessarily look to the administrative construction of the regulation, if the meaning of the words used is in doubt. * * *' [T]he ultimate criterion is the administrative interpretation, which becomes of controlling weight unless it is plainly erroneous or inconsistent with the regulation." (Footnote). Accord, Udall v. Tallman, 380 U.S. 1, 85 S.Ct. 792, 13 L.Ed. 616 (1965). See: Zemel v. Rusk, 381 U.S. 1, 85 S. Ct. 1271, 14 L.Ed.2d 179 (1965).

■ We see nothing in the circumstances of this case to distinguish it from the force of the Courts holding in *Thorpe*. The plaintiffs have not established that the administrative interpretation of the regulation is plainly erroneous or inconsistent therewith. It is our conclusion that non-residents who are employed in the neighborhood area are entitled to vote for representatives on neighborhood councils. We recognize that the possibility of non-resident employees voting twice, i.e., where they work and again where they reside is a distinct possibility. However, this is a matter for election personnel who have the authority, under elective law, to challenge the validity of the vote. This possible infringement, standing alone, is insufficient to rise to a level that would require this Court to view the administrative interpretation as plainly erroneous.

In light of the fact that we have decided that the elective rules as interpreted by the Model Cities Administrator are valid and consistent with the policies of HUD, we find it unnecessary to reach the issues raised in the defendants' motion to dismiss the complaint.