**DAVIS ASSOCIATES, INC.**

v.

**SECRETARY, U. S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT and Dover Housing Authority.**

**Civ. A. No. 73-296.**

United States District Court,
D. New Hampshire.

April 3, 1974.

David A. Brock, Perkins, Douglas & Brock, Concord, N. H., for plaintiff.

Joseph M. Corwin, Corwin & Corwin, Boston, Mass., and Donald R. Bryant,

Burns, Bryant, Hinchey, Cox & Shea, Dover, N. H., for Dover Housing Authority.

Robert Schwartz, Asst. U. S. Atty., Concord, N. H., David Sonenshein, Regional Counsel, U. S. Dept. HUD, Boston, Mass., for U. S. Dept. of Housing and Urban Development.

## MEMORANDUM OPINION

BOWNES, District Judge.

This case arises out of a refusal by the Dover Housing Authority (hereinafter DHA or Dover) and the Department of Housing and Urban Development (hereinafter HUD) to award Davis Associates, Inc., a construction company, a contract to build housing for the elderly under the Low Rent Housing Act, 42 U.S.C.A. § 1401 et seq. Davis, as low bidder, claims that the actions of Dover and HUD

> constitutes [sic] a breach of good faith and an arbitrary, capricious and gross abuse of discretion in the performance and administration of their duties under the laws of the United States, and said action is not in the best interest of the government and in other ways not in accordance with the law. Complaint, ¶ 21.

Jurisdiction is predicated on 28 U.S.C.A. §§ 1331 and 1361 and 5 U.S.C.A. §§ 701–706.

Before delving into the particular facts of this case, a brief overview of how the Low Rent Housing Act operates is necessary. The following description is taken from HUD's brief:

> Under the United States Housing Act of 1937, as amended, 42 U.S.C. § 1401 et seq., the construction of public housing is carried out in the following manner: The Local Housing Authority (LHA) [here, Dover] submits an application to HUD. Once certain prerequisites are fulfilled and the application is approved, a Program Reservation is issued by HUD. The Res-

> ervation is not a legal obligation but simply an indication that if funds are available and subsequent legal requirements are met, HUD will provide funds to finance the units. The Preliminary Loan Contract is the first formal agreement between HUD and the LHA. This loan is designed to cover the cost of surveys and options on sites as well as the preparation of the LHA's Development Program. Once a site has been chosen by the LHA and tentatively approved by HUD, the LHA prepares a Development Program, including the LHA's program for implementing its proposal. Once all of these steps have been satisfactorily completed, the LHA and HUD sign an Annual Contributions Contract (ACC), by the terms of which HUD agrees to provide loans for the development of the Project and to cover the capital cost of the Project by paying the annual interest and principal amortization on tax-free bonds to be issued by the LHA, generally maturing in forty years. It is at this point that the LHA invites sealed bids for construction of the Project. When the successful bidder is chosen, he enters into a construction contract with the LHA. . . . Title to the Project remains at all times in the LHA. Following completion of construction, the LHA is responsible for managing and maintaining the project. HUD's Brief at 2.

### A. THE FACTS

Viewing them most favorably to the plaintiff, the pertinent facts appear as follows.[1] In the early part of 1973, Dover finalized an annual contributions contract (hereinafter ACC) with HUD for the construction of approximately one hundred dwelling units for the elderly. The HUD Estimated Total Development Cost was $2,450,000. Exhibit 1, Amendment No. 7. Thereafter, Dover sent out invitations for bids which were

---

1. The parties have stipulated that certain documentary evidence be considered in the disposition of these motions to dismiss. The documents, numbered 1 through 25, will be referred to as exhibits.

to be publicly opened on August 27, 1973. Each invitation contained the following language:

The Dover Housing Authority reserves the right to reject any or all bids and to waive any formalities in the bidding. Exhibit 2, Section C at 2.

Several bids were submitted, but none were within the Project prototype cost.

HUD then authorized Dover to negotiate with the lowest three bidders, and Dover commenced negotiations in September of 1973. Exhibits 4 and 5; Exhibit 2, Section D, ¶ 18. Subsequently, one of the three withdrew from negotiations, and another (Reynolds) was disqualified for failure to comply with the procedures for submitting a breakdown of specific substituted subcontractors.[2] Exhibit 11. Davis' negotiated bid, although still over the proposed Project prototype cost, was within the prototype cost HUD could approve.[3] 24 C.F.R. § 275, Appendix B(2). On September 18th the DHA voted to award Davis the contract subject to HUD approval, and on September 19th recommended that HUD approve the award and amend the ACC loan from $2,450,000 to $2,627,100. Exhibits 13 and 16.

On September 25th HUD refused to approve the award to Davis. The refusal was based on "considerable confusion" surrounding the negotiations and the "possibility of litigation" arising therefrom,[4] as well as

the opinion that considerable savings might possibly result if the Project were to be redesigned . . . and put out for new bids. Exhibit 18; see also Exhibit 22.

On September 28th Dover informed Davis that, on the basis of the HUD ruling, it was rejecting all bids. Exhibit 19.

Having been informally advised by the DHA that failure to get HUD approval was the only obstacle to an award, Davis contacted HUD directly; and a meeting between HUD and Davis was held on October 30th. As a result of this meeting, HUD agreed to modify the terms of its September 25th refusal of approval and so notified Dover by letter on November 5th. Exhibit 23. The November 5th modification set forth several preconditions to HUD's approval of an award to Davis, and noted:

We are modifying the terms of [the September 25th] letter to the extent that the Dover Housing Authority may, *at its discretion*, resubmit its previous recommendation to HUD to award the construction contract to [Davis]. [Emphasis added.]

\* \* \* \* \* \*

This letter shall not be interpreted as a guarantee of approval to award the contract to Davis Associates, Inc. We shall review your documentation along with the previously submitted material for conformance with all applicable statutes and regulations. If the submitted evidence is justifiable and supportable, a request will be made through the Regional Office to the Central Office for approval of an Amendment to the Annual Contributions Contract. No construction contract may be signed prior to the execution of an amended ACC. Exhibit 23.

On November 28th the DHA voted not to resubmit the Davis bid for HUD approval, Exhibit 24, and later notified HUD that it intended to readvertise the Project for bids. Exhibit 25. In fact, Dover has redesigned the project and put it out for bids. The bids are to be opened on April 2, 1974.

Davis' complaint, as explained by counsel at oral argument, prays that the DHA and HUD be permanently enjoined from rebidding the project and that

---

2. The parties agree that the Reynolds' submission did not constitute a new bid. Magistrate's Report at 2.

3. The bid was between 107 and 109 percent of the Project prototype cost budgeted by

HUD. Magistrate's Report at 2; HUD's Brief at 12.

4. This caution on the part of HUD was in part occasioned by Reynolds' challenge to the negotiation procedure. Exhibit 14.

Davis be awarded the contract on the basis of its negotiated bid plus provable increased costs. The case is before me now on defendants' motions to dismiss.

## B. THE CLAIMS

The essence of Davis' complaint is that HUD's disapproval of the negotiated bid and the DHA's decision not to resubmit the Davis bid after HUD's disapproval was conditionally withdrawn were both arbitrary, capricious, and an abuse of discretion. Davis does not claim that it had a contract with either DHA or HUD.[5] Indeed, such a claim would be futile, for the DHA's September 18th award to Davis makes clear that HUD approval was a condition precedent to a binding contract, Exhibit 13; and such approval is not alleged and does not appear from the documentary evidence before me. Moreover, the DHA clearly reserved its right to reject all bids, and Davis was aware of this reservation. Exhibit 2, Section C at 2; Exhibit 2, Section D, ¶ 12. In fact, Davis implicitly recognizes the lack of a binding contract in its prayer for relief

> [t]hat the Honorable Court issue an order requiring the defendants to show cause why said contract should not be immediately awarded to the plaintiffs. Complaint, Prayer for Relief, ¶ 2.

Defendants' arguments[6] are three: first, that the court lacks subject matter jurisdiction; second, that plaintiff has no standing; and third, that "[t]he agency action complained of is committed by law to agency discretion thus barring judicial review."

## C. DISCUSSION

■ 1. *Jurisdiction.* The initial question with which I am confronted is whether this court has subject matter jurisdiction. Plaintiff has alleged jurisdiction under 28 U.S.C.A. § 1331 (federal question), 28 U.S.C.A. § 1361 (mandamus), and 5 U.S.C.A. § 706 (Administrative Procedure Act, hereinafter APA). 28 U.S.C.A. § 1331(a) provides:

> The district courts shall have original jurisdiction of all civil actions wherein the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and arises under the Construction, laws, or treaties of the United States.

In an attempt to invoke federal question jurisdiction, plaintiff relies on 42 U.S.C.A. § 1415(5) and the Federal Procurement Regulations (hereinafter FPR), 41 C.F.R. § 1–1.000 et seq. 42 U.S.C.A. § 1415(5) merely directs the Secretary to establish prototype costs for each area in the United States and provides that

> any annual contributions . . . shall not exceed by more than 10 per centum the appropriate prototype cost for the area.

This section does not in any way relate to the decision of whether or not to approve a specific bid, other than to prohibit HUD from approving a bid in excess of 10 per centum over the appropriate Project prototype cost.[7] Put simply, plaintiff's cause of action does not "arise under" 42 U.S.C.A. § 1415(5).

Plaintiff also contends that the HUD and DHA action is contrary to the FPR. The FPR establish standards to be followed in the negotiated bid situation, and 41 C.F.R. § 24–1.004–1 provides:

> The FPR and HUDPR apply to all procurement of personal property and nonpersonal services (including construction) on behalf of the Secretary of Housing and Urban Development,

---

5. This court may very well not have jurisdiction over a breach of contract claim by Davis against HUD, since the amount in controversy would probably be greater than $10,000. *See* 28 U.S.C.A. § 1346.

6. I do not find it necessary to reach the other points urged by HUD or Dover in their briefs.

7. This section might, for example, give a prospective bidder or possibly an ordinary taxpayer the right to object to an award made to a contractor whose bid exceeded the Project prototype cost by more than 10 percent.

except as may be otherwise authorized by law.

However, the provisions of the FPR are specifically limited to procurement by federal agencies. 41 C.F.R. § 1–1.002. The present case involves a loan by HUD to local authorities. Under the HUD–DHA agreement

[t]itle to the Project remains at all times in the LHA [Local Housing Authority] . . . [and] the LHA is responsible for managing and maintaining the project. HUD Brief at 2.

In this situation a federal agency is not procuring anything. Therefore, the FPR do not apply. Pullman, Inc. v. Volpe, 337 F.Supp. 432, 437 (E.D.Pa. 1971). Since the FPR are not applicable here, plaintiff cannot claim that his cause of action arises under them.

Plaintiff claims that the APA provides a basis for jurisdiction in this case. It is not clear that the APA can serve as an independent basis of jurisdiction, i. e., that "the Act itself is an affirmative grant of jurisdiction to the district courts to review agency action according to its terms absent any other basis for federal jurisdiction." Charlton v. United States, 412 F.2d 390, 396 (3d Cir. 1969) (concurring opinion of Stahl, J.); see Zimmerman v. United States Government, 422 F.2d 326, 330–331 (3d Cir.), cert. denied 399 U.S. 911, 90 S.Ct. 2200, 26 L.Ed.2d 565 (1970) and authorities cited therein. However, plaintiff also contends that 28 U.S.C.A. § 1361, the mandamus statute, confers jurisdiction in this situation. Although this seems dubious in light of the fact that the crux of the complaint is abuse of discretion, several courts appear to have predicated jurisdiction on mandamus powers in analogous situations. In Hahn v. Gottlieb, 430 F.2d 1243 (1st Cir. 1970), tenants of a federally subsidized[8] housing unit sought the right to an administrative hearing on proposed rent increases or, in the alternative, court review of the Federal Housing Authority's (hereinafter FHA)

determination. Since the action was characterized as in the nature of mandamus (i. e., to compel the FHA administrator to hold a hearing), the court did not discuss the jurisdictional problem. However, in Langevin v. Chenango Court, Inc., 447 F.2d 296 (2d Cir. 1971), which involved very nearly the *Hahn* situation, the court faced the problem directly. The court noted:

Although we have difficulty in seeing how 28 U.S.C. § 1361 would create federal jurisdiction over this claim, we treat it as "pendent" to the claim that a hearing was required. 447 F. 2d at 302 n. 10.

If I treat plaintiff's prayer for relief as a request that this court compel the DHA to award Davis the contract and that HUD be compelled to approve such contract, and alternatively that this court review the DHA and HUD administrative determinations, there does seem to be a basis for subject matter jurisdiction. Moreover, several other district courts seem to have assumed jurisdiction where review of administrative determinations was based on both mandamus and the APA. Rodriguez v. Barcelo, 358 F.Supp. 43 (D.P.R.1973); Lower Kensington Civil Assoc. v. Watson, 330 F. Supp. 1257 (E.D.Pa.1971); Johnson v. Udall, 292 F.Supp. 738 (C.D.Cal.1968).

■ *2. Standing.* Defendants claim that Davis lacks standing to challenge the administrative actions of HUD (and, although not made clear, of DHA as well). Standing is an illusive concept, and has caused particular trouble in the so-called "unsuccessful bidder" cases. However,

a settled line of authorities in the District of Columbia Circuit [has recognized] the standing of unsuccessful bidders on federal contracts . . . . Merriam v. Kunzig, 476 F.2d 1233 (3d Cir.), cert. denied Gateway Center Corp. v. Merriam, 414 U. S. 911, 94 S.Ct. 233, 38 L.Ed.2d 149 (1973).

8. *See* § 221(d)(3) of the National Housing Act, 12 U.S.C.A. § 1715*l*(d)(3).

And it would serve no purpose to repeat that analysis here. *See* Scanwell Laboratories, Inc. v. Shaffer, 137 U.S.App.D. C. 371, 424 F.2d 859 (1970); M. Steinthal & Co. v. Seamans, 147 U.S.App.D.C. 221, 455 F.2d 1289 (1971); Wheelabrator Corp. v. Chafee, 147 U.S.App.D.C. 238, 455 F.2d 1306 (1971);[9] and *see* Shannon v. United States Dept. of Housing and Urban Dev., 436 F.2d 809 (3d Cir. 1970). In this case plaintiff is claiming that HUD, in effect, controls the entire bid and award procedures. Therefore, while it can be argued that HUD's reversal of its determination to disapprove the Davis bid left Davis without any adverse HUD action to complain about, the final rejection of the Davis bid by Dover may, in reality, be attributable to HUD under plaintiff's theory of the case.[10]

■ *3. Reviewability.* Having decided that there is subject matter jurisdiction and that plaintiff has standing to bring his claim, I move to a consideration of whether the agency action complained of is reviewable by this court. The general rule as to the reviewability of discretionary agency action is codified in the Administrative Procedure Act, 5 U.S.C.A. § 701, which provides that there shall be review[11]

except to the extent that—

(1) statutes preclude judicial review; or

(2) agency action is committed to agency discretion by law.

In approaching this question, I recognize that there is a strong presumption in favor of review. Hahn v. Gottlieb, 430 F. 2d 1243, 1249 (1st Cir. 1970). This presumption may not be overcome unless

(a) congressional intent is discernable to make it unreviewable, or (b) the subject matter is for some reason inappropriate for judicial construction. Administrative Law Treatise, 1970 Supplement § 28.16 at 965, cited in Langevin v. Chenango Court, Inc., 447 F.2d 296, 303 (2d Cir. 1971).

Turning first to congressional intent, I find no clear declaration of specific intent in the Low Rent Housing Act. However, evidence of congressional intent may

be drawn not only from explicit language, but also from a statute's purpose and design. [Citing cases.] *Hahn, supra,* 430 F.2d at 1249.

Viewed as a whole, the Act shows that HUD and the local housing authorities were to be given a great deal of discretion in implementing the congressional policy of "alleviat[ing] . . . unemployment and . . . unsafe and insanitary housing conditions . . . ." 42 U.S.C.A. § 1401. By statute, the "development of low-rent housing" encompasses

any or all undertakings necessary for planning, land acquisition, demolition, construction, or equipment . . . . 42 U.S.C.A. § 1402.

The discretion available to HUD is emphasized by the permissive language in 42 U.S.C.A. §§ 1409, 1410, 1411, and 1444—the sections dealing with the general authority to make and amend loans, annual contributions and/or capital grant contracts with public housing

9. The fact that these cases involve challenges by an unsuccessful bidder against award to a successful bidder does not restrict their applicability in this case.

10. *See* Transmittal Notice, HMPC–FHA G 7415.1 (revised), February 1, 1972. Plaintiff claims that this document, particularly ¶¶ 1–32 through 1–35, is indicative of the pervasiveness of HUD control.

11. While it is clear that the enactment of the APA establishes the general rule that agency action is reviewable, the extent to which discretionary action was intended to be reviewable is unclear. This lack of clarity stems from the seeming irreconcilability between § 701, which creates an exception for "agency action is committed to agency discretion by law," and § 706(2)(A), which directs a reviewing court to set aside agency actions found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *See Langevin, supra,* 447 F.2d at 302–303.

agencies. Moreover, section 1406 makes HUD transactions "final and conclusive upon all officers of the Government." *See also* 42 U.S.C.A. § 1413. The language in these sections is to be contrasted with, for example, 42 U.S.C.A. § 1416, where Congress clearly mandated protection for laborers working on low-rent housing projects. However, although Congress established some specific procedures and limitations on spending, cost analysis, admissions policies and so forth, *see* 42 U.S.C.A. §§ 1410(g), 1411(b), 1415(5), the general authority to carry out the Act's policy is expressed in discretionary language. Pullman, Inc. v. Volpe, 337 F.Supp. 432, 438 (E.D.Pa.1971). This interpretation is borne out by the HUD regulations, particularly those which deal with the determination plaintiff here seeks to challenge. The regulations concerning approval of bids in excess of established Project prototype costs provide:

> A request for approval of a cost which exceeds the 105 percent cost limitation but which is not in excess of the statutory 110 percent may be submitted . . . [and must demonstrate that] approval is necessary and desirable in carrying out the objectives of the Act. 24 C.F.R. § 275, Appendix A.

This interpretation by HUD is entitled to deference by this court. *See* M. Steinthal & Co., *supra*, 455 F.2d at 1301.

While the congressional intent is not a model of clarity, I find that the administrative determination complained of by plaintiff is particularly inappropriate for judicial review. I base this finding on the three factors deemed relevant to this type of problem in *Hahn*:

> first, the appropriateness of the issues raised for review by the courts; second, the need for judicial supervision to safeguard the interests of the plaintiffs; and third, the impact of review on the effectiveness of the agency in carrying out its assigned role. 430 F.2d at 1249.

Davis' claim is that, although his bid exceeded the Project prototype cost, defendants sould have accepted the bid because it did not exceed the statutory maximum. 42 U.S.C.A. § 1415(5) and 24 C.F.R. § 275, Appendix. In this regard, Davis proposed to submit evidence that the defendants' rejections of its bid were

> decisions which, rather than being in the best interests of the government, the D.H.A. and the public, were . . . contrary to their collective and individual interests . . . . Plaintiff's Brief at 5.

Resolution of such a problem simply cannot be made in a court of law. The underlying issues involve consideration of the factors relevant to the Project prototype cost, since HUD's decision not to approve was at least partially predicated on "the opinion that considerable savings might possibly result if the Project were to be redesigned." Exhibit 18. These issues necessitate inquiry into construction costs, compliance with applicable FHA standards and other factors particularly ill-suited to court adjudication. 24 C.F.R. § 275, Appendix A. In addition, any decision to commit federal funds to the DHA would have to weigh the importance of that Project against other projects competing for limited federal resources. The expertise necessary to a responsible decision of this nature is demonstrated by the two-inch thick set of specifications (Exhibit 2) and the one hundred page ACC (Exhibit 1) which govern this project. Under these circumstances, to paraphrase *Hahn*, I willingly confess my incapacity to contribute intelligently to the problem. 430 F.2d at 1249–1250; *see* M. Steinthal & Co., *supra*, 455 F.2d at 1303; Pullman, Inc. v. Volpe, 337 F. Supp. 432, 437–439 (E.D.Pa.1971).

Unlike the situation in *Hahn*, the need for judicial intervention to protect general contractors is insubstantial. In fact, contractors, undoubtedly more well-versed in the vicissitudes of FHA bidding than the courts, should be equipped to protect themselves. Fur-

thermore, this is not the typical "unsuccessful bidder" case, where bidder A is claiming that a contract was improperly awarded to bidder B. Therefore, the *Scanwell* standing rationale, that bidders be encouraged to protect the integrity of the bidding system, is inapposite.

The last factor considered in *Hahn* was "the impact of review on the effectiveness of the agency in carrying out its assigned role." 430 F.2d as 1249. Although the situation here is unlike *Hahn* in that reviewability would not lead to repeated judicial intervention of ongoing supervision by an agency, *see Hahn, supra,* 430 F.2d at 1250 n.6, the generally dilatory effects of such review would still pertain.

### D. SUMMARY

Although this court has jurisdiction and although plaintiff has standing to bring his claim, the agency actions complained of here are not reviewable. The statutory design points, albeit obliquely, toward a congressional intent to make review unavailable. Moreover, the scope of review required here would be difficult for a court unfamiliar with the problems of low-rent housing construction and ill-equipped to gain such knowledge through an adversary proceeding. These "unrequited bidder" cases, especially since *Scanwell,* have caused serious problems in the courts because they often involve difficult judgments about the interpretation of complicated contract and procurement procedure and complex federal statutes and regulations. Very often, as here, these controversies require speedy resolution due to pending resolicitation of bids (as here), immediate need for the articles or services sought to be procured, *see* M. Steinthal & Co. v. Seamans, 147 U.S.App.D.C. 221, 455 F.2d 1289 (1971), or rising construction costs.

> [W]hen the court is thrust into the vortex of emergency litigation in which bidders are seeking immediate, injunctive relief, and all parties are seeking expedited determination, it is

difficult in the time available for the court to become steeped in the pertinent learning. M. Steinthal & Co., *supra,* 455 F.2d at 1303.

In holding that the agency determinations complained of here are not reviewable, I do not intend to comment on those instances where HUD and/or a local housing authority exceeds its jurisdiction or fails to comply with statutorily or constitutionally mandated duties or standards. *Hahn, supra,* 430 F.2d at 1251; Langevin, *supra,* 447 F.2d at 303–304; M. Steinthal & Co., *supra,* 455 F.2d 1289, 1291, 1301; *cf.* Norwalk CORE v. Norwalk Redevelopment Agency, 395 F.2d 920 (2d Cir. 1968). I do note, however, that this court may not substitute its judgment for that of the agency. M. Steinthal & Co., *supra,* 455 F.2d at 1301.

Lastly, I note that in reality Davis has no claim against the defendants on the merits. HUD reversed its original decision not to approve the bid and returned it for reconsideration by Dover. In allowing Dover full discretion on the question of whether or not to resubmit the bid for approval, HUD was giving effect to the clearly announced congressional policy

> to vest in the local public housing agencies the maximum amount of responsibility in the administration of the low-rent housing program . . . . 42 U.S.C.A. § 1401. *See also* 42 U.S.C.A. §§ 1413(b), 1415(7).

And Dover's decision not to resubmit the bid should be given deference for the same reason.

If Dover and HUD are considered separate agencies,[12] then Davis clearly has no claim against HUD. And if Davis has no claim against HUD, then this court has no jurisdiction over Dover, since there is no diversity of citizenship between Dover and Davis.

For the foregoing reasons, defendants' motions to dismiss are granted.

So ordered.

---

12. *See* text accompanying note 10, *supra.*