**STATE OF NORTH CAROLINA et al.,**
Plaintiffs,

v.

**FEDERAL POWER COMMISSION et al.,**
Defendants.

**No. C–74–391–W.**

United States District Court,
M. D. North Carolina,
Wilkesboro Division.

May 7, 1975.

Rufus L. Edmisten, Atty. Gen., and Millard R. Rich, Jr., Asst. Atty. Gen., Raleigh, N. C., Norman B. Smith, Greensboro, N. C., and Prof. Thomas J. Schoenbaum, Chapel Hill, N. C., for plaintiffs.

Drexel D. Journey, George W. McHenry, Jr., and Steven A. Taube, Washington, D. C., for Federal Power Commission and members of the Commission.

Kenneth Wooten, Jr., and J. Ruffin Bailey, Raleigh, N. C., for the Appalachian Power Co., Inc.

James E. Ryan, Jr., Asst. Atty. Gen., Richmond, Va., for the Commonwealth of Virginia.

## MEMORANDUM OPINION

GORDON, Chief Judge.

### I.

This is an action to enjoin construction and other development activities on the New River in Northwestern North Carolina, until such time as the Secretary of the Interior has completed a study pursuant to Section 2(a)(ii) of the Wild and Scenic Rivers Act, 16 U.S.C. § 1273(a)(ii), to determine whether a segment of this river, which would be eliminated as a free-flowing stream by a proposed hydroelectric dam, is suitable for designation as a scenic river under Section 2(b) of the Act, 16 U.S.C. § 1273(b). The action is brought jointly by the State of North Carolina and several individuals owning land which will be taken by the defendant, Appalachian Power Company, for the Modified Blue Ridge Project pursuant to a license issued June 14, 1974, by the defendant Federal Power Commission (F.P.C.).

On June 14, 1974, the F.P.C. issued Opinion No. 698 granting a license to Appalachian Power Company (Appalachian) to construct a combined conventional and pumped storage hydroelectric project on the New River near Galax and Independence, Virginia, and Sparta, North Carolina. The licensing of the Modified Blue Ridge Project ended twelve years of administrative considera-

tion of the project by the F.P.C. Upon application for rehearing and motions for reconsideration, the Commission, on August 12, 1974, issued its Opinion No. 698–A reaffirming, with minor modifications, its Opinion No. 698 of June 14, 1974. Thereafter, on October 7, 1974, North Carolina filed a petition for review pursuant to Section 313(b) of the Federal Power Act, 16 U.S.C. § 825*l*(b), in the United States Court of Appeals for the District of Columbia Circuit requesting that the Court set aside Opinion Nos. 698 and 698–A and their respective accompanying orders granting a license to Appalachian to construct and operate the Modified Blue Ridge Project.[1] The Commission filed the certificate of record in lieu of record with the Court of Appeals on November 25, 1974.

In 1968, during the first decade of the F.P.C.'s consideration of Appalachian's application for a license, Congress enacted the Wild and Scenic Rivers Act,[2] which provides for a National Wild and Scenic Rivers System.[3] Section 3 of the Act, as amended, 16 U.S.C. § 1274, authorizes for inclusion in the national system ten rivers or segments thereof. Section 5 of the Act, 16 U.S.C. § 1276, sets out twenty-seven additional rivers designated as potential additions to the system and requires the Secretary (Interior or Agriculture) to study and report on the suitability or non-suitability

of each river for inclusion in the system. In addition to sections 3 and 5, the Act provides in section 2(a), 16 U.S.C. § 1273(a), two ways in which other rivers may be added to the system in the future.

"§ 1273. *National wild and scenic rivers system; Congressional authorization for inclusion; designation by State legislatures; permanent administration by States; application for inclusion by Governors; satisfaction of criteria; eligibility for inclusion*

"(a) The national wild and scenic rivers system shall comprise rivers (i) that are authorized for inclusion therein by Act of Congress, or (ii) that are designated as wild, scenic or recreational rivers by or pursuant to an act of the legislature of the State or States through which they flow, that are to be permanently administered as wild, scenic or recreational rivers by an agency or political subdivision of the State or States concerned without expense to the United States, that are found by the Secretary of the Interior, upon application of the Governor of the State or the Governors of the States concerned, or a person or persons thereunto duly appointed by him or them, to meet the criteria established in this chapter and such criteria supplementary thereto as he may prescribe, and that are approved by

---

1. State of North Carolina v. Federal Power Commission, United States Court of Appeals for the District of Columbia Circuit, No. 74–1941.

2. Pub.L. 90–542, Oct. 2, 1968, 82 Stat. 906, 16 U.S.C. § 1271 et seq.

3. 16 U.S.C. §§ 1271 and 1272 provide:
 "§ 1271. *Congressional declaration of policy*
 "It is hereby declared to be the policy of the United States that certain selected rivers of the Nation which, with their immediate environments, possess outstandingly remarkable scenic, recreational, geologic, fish and wildlife, historic, cultural, or other similar values, shall be preserved in free-flowing condition, and that they and their immediate environments shall be protected for the benefit and enjoyment of present and future generations. The Congress de-

clares that the established national policy of dam and other construction at appropriate sections of the rivers of the United States needs to be complemented by a policy that would preserve other selected rivers or sections thereof in their free-flowing condition to protect the water quality of such rivers and to fulfill other vital national conservation purposes.
 "§ 1272. *Congressional declaration of purpose*
 "The purpose of this chapter is to implement the policy set out in section 1271 of this title by instituting a national wild and scenic rivers system, by designating the initial components of that system, and by prescribing the methods by which and standards according to which additional components may be added to the system from time to time."

him for inclusion in the system, including, upon application of the Governor of the State concerned, the Allagash Wilderness Waterway, Maine, and that segment of the Wolf River, Wisconsin, which flows through Langlade County." 16 U.S.C. § 1273(a).

Section 7 of the Act, 16 U.S.C. § 1278, prohibits the F.P.C. from licensing any projects on the ten rivers listed in section 3, and on the 27 "study rivers" listed in section 5 during their study period plus an additional period thereafter for congressional consideration of any Secretarial proposal, or Secretarial consideration of any State proposal pursuant to § 1273(a)(ii). Insofar as relevant to the present controversy, section 7 provides as follows:

"(b) The Federal Power Commission shall not license the construction of any dam, water conduit, reservoir, powerhouse, transmission line, or other project works under the Federal Power Act, as amended, on or directly affecting any river which is listed in section 1276(a) of this title, and no department or agency of the United States shall assist by loan, grant, license, or otherwise in the construction of any water resources project that would have a direct and adverse effect on the values for which such river might be designated, as determined by the Secretary responsible for its study or approval—

"(i) during the ten-year period following October 2, 1968 or for a three complete fiscal year period following any Act of Congress designating any river for potential addition to the national wild and scenic rivers system, whichever is later, unless, prior to the expiration of the relevant period, the Secretary of the Interior and, where national forest lands are involved, the Secretary of Agriculture, on the basis of study, determine that such river should not be included in the national wild and scenic rivers system and notify the Committees on Interior and Insular Affairs of the United States Congress, in writing, including a copy of the study upon which the determination was made, at least one hundred and eighty days while Congress is in session prior to publishing notice to that effect in the Federal Register, and

"(ii) during such additional period thereafter as, in the case of any river the report for which is submitted to the President and the Congress, is necessary for congressional consideration thereof or, in the case of any river recommended to the Secretary of the Interior for inclusion in the national wild and scenic rivers system under section 1273(a)(ii) of this title, is necessary for the Secretary's consideration thereof, which additional period, however, shall not exceed three years in the first case and one year in the second." 16 U.S.C. § 1278(b).

The New River in North Carolina is not among the rivers listed in either section 3 or section 5 of the Act, and whether it is a "river recommended to the Secretary of the Interior for inclusion in the national wild and scenic rivers system under section 1273(a)(ii)" is a contested issue.

In February of 1974, the House and Senate agreed to delete from the conference version of the Rivers and Harbors Authorization Act, HR 10203, 93rd Congress, a provision that had been included in the House version to study the New River to determine its suitability for inclusion in the Wild and Scenic Rivers System. This provision would have prevented the F.P.C. from licensing the Modified Blue Ridge Project. 16 U.S.C. § 1278(b)(i), *supra.*

On May 28, 1974, the Senate passed S. 2439, to amend section 5 of the Wild and Scenic Rivers Act, 16 U.S.C. § 1276, to provide for a study of the New River where the Blue Ridge project would be located, thereby preventing the F.P.C. from licensing the project. 120 Cong.

Rec. at S. 9077, daily ed.[4] After considerable parliamentary jousting, the House, on December 18, 1974, refused to suspend its rules to permit passage of S. 2439, thereby causing it to expire at the end of the 93rd Congress. 120 Cong. Rec. at H. 12261–H. 12268, H. 12290–H. 12291, daily ed.

On March 21, 1974, the General Assembly of North Carolina enacted a statute providing that a 4.5 mile "segment of the New River which extends . . . to the Virginia line . . . shall be included in the North Carolina Natural and Scenic Rivers System." N.C.G.S. § 113A–35.1. This enactment was in conformity with the requirements of 16 U. S.C. § 1273(a)(ii). On December 12, 1974, the Governor of North Carolina, armed with the newly enacted G.S. § 113A–35.1, submitted to the Secretary of the Interior a Management Plan for the South Fork and Main Stem of the New River, pursuant to section 2(a)(ii) of the Act, and requested that the Secretary designate the New River in Northwestern North Carolina a scenic river area under the Wild and Scenic Rivers Act. Thereafter, on December 16, 1974, North Carolina by motion requested the F.P.C. to stay the effective date of the license until the Court of Appeals for the District of Columbia or the Supreme Court, as the case may be, renders a decision on the appeal of the Commission's Opinions and Orders in Nos. 698 and 698–A.[5] Thereafter, on December 18, 1974, the plaintiffs filed their complaint in this action, thereby bringing to at least three the number of forums in which North Carolina is seeking to block the Modified Blue Ridge Project.[6]

Indeed, in view of the past history and future prospects for continued controversy the present action is hardly more than a peripheral skirmish in a protracted war. The issue presented, however, is not insignificant and deserves careful attention. The concern of the plaintiffs is not difficult to understand and their cause is not without merit.

The relief requested in this lawsuit is twofold. First, the plaintiffs pray that:

"The Court issue a permanent injunction, enjoining and restraining Defendants, their agents and servants and all persons acting in participation and concert with them, from taking any steps toward construction of the Modified Blue Ridge Project for such period of time necessary for the Secretary of the Interior to adequately study the New River in North Carolina to determine its suitability as a Federal Scenic River." Complaint, Prayer for Relief, paragraph 6.

And secondly, that:

"The Court enter a judgment declaring that construction pursuant to the Federal Power Commission license and the Federal Power Commission's refusal to delay the effective date of the license are illegal until the Secretary of Interior has completed the study required pursuant to 16 U.S.C. § 1273(a)(ii)." Complaint, Prayer for Relief, paragraph 7.

Plaintiffs have also moved for a preliminary injunction (in the same manner as the request for a permanent injunction, *supra*), until a determination of

---

4. It should be noted that the F.P.C. was aware of this pending legislation and therefore imposed an effective date of January 2, 1975, upon the license for the project. See F.P.C. Opinion No. 698, June 14, 1974, pp. 55–57.

5. By order issued December 31, 1974, this motion was denied.

6. First, at least five bills have already been introduced in the 94th Congress by North

Carolina solons for this purpose: H.R. 780, 781, 782, 783, and S. 158. Secondly, the F.P.C. Opinions and Orders in 698 and 698–A are on appeal to the Court of Appeals for the District of Columbia, *supra*, note 1. Furthermore, news media accounts indicate that further legislation concerning the New River is currently under consideration by the North Carolina General Assembly.

this action on the merits.[7] Defendants have moved to dismiss for want of subject matter jurisdiction and failure to exhaust administrative remedies. In addition, the Commonwealth of Virginia has moved to intervene and to dismiss. Virginia contends that her intervention as of right would deprive this Court of jurisdiction because it would create a controversy between two or more states which may only be heard by the United States Supreme Court. United States Constitution, Art. III, § 2, cl. 2, and 28 U.S.C. § 1251(a)(1).

On December 30, 1974, a conference with attorneys was held, and the Court heard oral argument from all parties with respect to each of the aforementioned motions. At the hearing, the Court denied plaintiff's request for a temporary restraining order and indicated that it would first decide the defendants' motions to dismiss, and if denied, would allow additional time for defendants to further respond to the motion for preliminary injunction. After much careful reflection and consideration, it is concluded that the action must be dismissed.

## II.

Any analysis of district court jurisdiction to entertain an attack upon the validity of F.P.C. action or inaction must begin with section 313(b) of the Federal Power Act, 16 U.S.C. § 825l(b).

"§ 825l. Rehearings; court review of orders

\* \* \* \* \* \*

"(b) Any party to a proceeding under this chapter aggrieved by an order issued by the Commission in such proceeding may obtain a review

of such order in the United States Court of Appeals for any circuit wherein the licensee or public utility to which the order relates is located or has its principal place of business, or in the United States Court of Appeals for the District of Columbia, by filing in such court, within sixty days after the order of the Commission upon the application for rehearing, a written petition praying that the order of the Commission be modified or set aside in whole or in part. A copy of such petition shall forthwith be transmitted by the clerk of the court to any member of the Commission and thereupon the Commission shall file with the court the record upon which the order complained of was entered, as provided in section 2112 of Title 28. *Upon the filing of such petition such court shall have jurisdiction, which upon the filing of the record with it shall be exclusive, to affirm, modify, or set aside such order in whole or in part.* No objection to the order of the Commission shall be considered by the court unless such objection shall have been urged before the Commission in the application for rehearing unless there is reasonable ground for failure so to do. The finding of the Commission as to the facts, if supported by substantial evidence, shall be conclusive. If any party shall apply to the court for leave to adduce additional evidence, and shall show to the satisfaction of the court that such additional evidence is material and that there were reasonable grounds for failure to adduce such evidence in the proceedings before the Commission, the court may order such additional evidence to be taken before the Commission and to be adduced

7. With respect to the requests for injunctive relief, it is worth noting that plaintiffs are not in imminent danger of irreparable harm. The following statement was made by the representative of Appalachian Power Company at the hearing on these motions on December 30, 1974.

"In the normal course of our construction program, putting any litigation to one side, in the normal course of our construction program, we would not propose to engage in any construction work, any clearing, any condemnation, in the State of North Carolina for at least three years from the effective date of the license. It would probably be longer than that, Your Honor." Transcript of Conference with attorneys held December 30, 1974, page 13.

upon the hearing in such manner and upon such terms and conditions as to the court may seem proper. The Commission may modify its findings as to the facts by reason of the additional evidence so taken, and it shall file with the court such modified or new findings which, if supported by substantial evidence, shall be conclusive, and its recommendation, if any, for the modification or setting aside of the original order. The judgment and decree of the court, affirming, modifying, or setting aside, in whole or in part, any such order of the Commission, shall be final, subject to review by the Supreme Court of the United States upon certiorari or certification as provided in sections 346 and 347 of Title 28." [Emphasis added]

Plaintiffs dismiss section 313(b) as being inapplicable to the present action. They maintain that they are not seeking to modify or set aside an F.P.C. order in whole or in part,[8] but rather they are seeking to obtain enforcement of a statutory duty imposed upon the F.P.C. by the Wild and Scenic Rivers Act. Plaintiffs aver that this Court has authority to remedy the F.P.C.'s illegal disregard of 16 U.S.C. § 1278(b) by virtue of provisions of the Administrative Procedure Act, 5 U.S.C. §§ 701–706, and the Writ of Mandamus authorized by the All Writs Act, 28 U.S.C. § 1651. The Court does not question the proposition that in the appropriate case it has the authority to compel agency action pursuant to the Administrative Procedure Act. *See* 5 U.S.C. § 706(1); Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971); Environmental Defense Fund v. Hardin, 138 U.S.App.D.C. 391, 428 F.2d 1093 (1970). Similarly, in the more limited scope of ministerial duties, mandamus might be an appropriate remedy. However, the Court is convinced that the

present action is not one which is appropriate for consideration under either of plaintiffs' theories.

Section 313(b) of the Federal Power Act, *supra*, is a jurisdictional hurdle which this action cannot surmount. Plaintiffs rely upon a substantial line of cases which have created and followed an important exception to exclusive jurisdiction statutes for review of administrative orders. These include Leedom v. Kyne, 358 U.S. 184, 79 S.Ct. 180, 3 L.Ed.2d 210 (1958); Deering Milliken, Inc. v. Johnston, 295 F.2d 856 (4th Cir. 1961); Izaak Walton League of America v. Schlesinger, 337 F.Supp. 287 (D.D.C. 1971); United Gas Pipe Line Co. v. F.P.C., 86 U.S.App.D.C. 314, 181 F.2d 796 (1950), and Elmo Division of Drive-X Company v. Dixon, 121 U.S.App.D.C. 113, 348 F.2d 342 (1965). However, in each of these cases there was no pending review of the complained of agency action, and no final order from which to appeal. In short, there was no other adequate remedy.

In the leading case of Leedom v. Kyne, *supra*, the district court was faced with a blatant and egregious violation of a provision of the National Labor Relations Act by the National Labor Relations Board. The limited scope of the decision is apparent from the manner in which the Court asked, and then answered, the issue of the case.

"This case, in its posture before us, involves 'unlawful action of the Board [which] has inflicted an injury on the [respondent].' Does the law, 'apart from the review provisions of the . . . Act,' afford a remedy? We think the answer surely must be yes. This suit is not one to 'review,' in the sense of that term as used in the Act, a decision of the Board made within its jurisdiction. Rather it is one to strike down an order of the Board made in excess of its delegated powers and contrary to a specific pro-

---

8. In this regard, recall plaintiffs' prayer for relief, *supra*, wherein they ask for an injunction restraining defendants "from taking any steps toward construction," and for a judgment declaring illegal the F.P.C.'s "refusal to delay the effective date of the license."

hibition in the Act. Section 9(b)(1) is clear and mandatory. It says that, in determining the unit appropriate for the purposes of collective bargaining, 'the Board *shall not* (1) decide that any unit is appropriate for such purposes if such unit includes both professional employees and employees who are not professional employees unless a majority of such professional employees vote for inclusion in such unit.' (Emphasis added.) Yet the Board included in the unit employees whom it found were not professional employees, after refusing to determine whether a majority of the professional employees would 'vote for inclusion in such unit.' Plainly, this was an attempted exercise of power that had been specifically withheld. It deprived the professional employees of a 'right' assured to them by Congress. Surely, in these circumstances, a Federal District Court has jurisdiction of an original suit to prevent deprivation of a right so given." 358 U.S. 184, 188–189, 79 S.Ct. 180, 183, 3 L.Ed.2d 210.

Plaintiffs, in essence, contend that *Leedom* established the proposition that district court review of agency action (otherwise committed by statute to the Court of Appeals) is available whenever an aggrieved party can make a colorable claim that such agency acted in violation of a federal statute because such a statutory violation is ipso facto an exercise of power in excess of authority. Plainly, this is an unwarranted interpretation. *See e. g.,* Boire v. Greyhound Corp., 376 U.S. 473, 481, 84 S.Ct. 894, 899, 11 L.Ed.2d 849, 855 (1964); Brotherhood of Railway and S.S. Clerks v. Ass'n for Ben. of Non-Contract Employees, 380 U.S. 650, 659, 85 S.Ct. 1192, 1197, 14 L.Ed.2d 133, 140 (1965), and United States v. Feaster, 410 F.2d 1354, 1366–1368 (5th Cir. 1969).

Where in the Wild and Scenic Rivers Act, much less in the Federal Power Act itself, does it say that the F.P.C. shall stay the effective date of a license already issued? Section 7 of the Act states that the F.P.C. "shall not license," it does not command that a license already issued be stayed. However, assuming, arguendo, that the plaintiffs are correct on the substantive merits of their claim (*i. e.,* that 16 U.S.C. § 1278 (b)(ii) does require the F.P.C. to stay a previously issued license upon a § 1273(a)(ii) application to the Secretary of the Interior) that would not alter the conclusion of this Court that it is without jurisdiction in the present case at the present time. This is so because the plaintiffs have an adequate remedy in the United States Court of Appeals for the District of Columbia as will now be shown.

First, plaintiffs' Wild and Scenic Rivers Act contention is presently before the Court of Appeals. F.P.C. Opinion and Order No. 698, being reviewed in the Court of Appeals, considered and attempted to accommodate the Wild and Scenic Rivers Act.[9] Although North Carolina apparently did not raise the point as an objection in its application for rehearing [10] as required by section 313(b) of the Federal Power Act, that section does provide an exception.[11] Since plaintiffs' § 1278(b)(ii) Wild and Scenic Rivers Act claim did not mature until December 12, 1974, when the Governor made his request to the Secretary of the Interior, it appears likely that North Carolina could avail itself of that exception and press the argument before the Court of Appeals.

9. See Note 4, *supra.*

10. *See* F.P.C. Opinion and Order Denying Application for Rehearing and Motions for Reconsideration, No. 698–A August 12, 1974.

11. ". . . No objection to the order of the Commission shall be considered by the court unless such objection shall have been urged before the Commission in the application for rehearing unless there is reasonable ground for failure so to do . . . ." 16 U.S.C. § 825*l*(b).

Second, on December 16, 1974, North Carolina filed a "Motion for Stay of Effective Date of License Pending Appeal" with the Federal Power Commission. One of the two grounds urged in support of the motion was the following:

"2. The New River is now or will be considered for inclusion in the Federal Wild and Scenic Rivers System pursuant to the provisions of 16 U.S.C. § 1273(a)(ii), as requested by the Governor of North Carolina to the Secretary of Interior in a letter dated December 12, 1974. (copy attached)."

On December 31, 1974, the F.P.C. issued an "Order Denying Motion for Stay" which set forth the Commission's reasoning in rejecting North Carolina's Wild and Scenic Rivers Act contention. As this is a final order denying relief, North Carolina is an aggrieved party entitled to appeal it to the Court of Appeals.[12] Rule 18, Federal Rules of Appellate Procedure; Carolina Aluminum Co. v. Federal Power Commission, 97 F.2d 435, 436 (4th Cir. 1938); cf. Greene County Planning Board v. Federal Power Commission, 490 F.2d 256 (2d Cir. 1973).

Finally, pursuant to Rule 18 of the Federal Rules of Appellate Procedure, North Carolina did file a petition for stay pending appeal with the Court of Appeals on December 23, 1974. In that petition plaintiff again raised the Wild and Scenic Rivers Act argument, *inter alia*, it pursues in this Court. Thereafter, on January 31, 1975, the Court of Appeals granted North Carolina's petition, and as of this writing, Order No. 698 remains stayed.

■■■ The foregoing makes plain that plaintiffs' reliance on the Administrative Procedure Act is misplaced. The right of review granted by 5 U.S.C. § 702 is not unlimited. Sections 703 and 704 of Title 5, U.S.C.,[13] bar the complaint in this action from review pursuant to the Act, because prior, adequate and exclusive opportunity for judicial review is provided by section 313(b) of the Federal Power Act, 16 U.S.C. § 825*l*(b).

The cases relied upon by plaintiff can be readily distinguished. Deering Milliken v. Johnston, 295 F.2d 856 (4th Cir. 1961), involved a claim of unnecessary and prejudicial delay by the N.L.R.B. in the conduct of certain administrative proceedings. Section 6(a) of the Administrative Procedure Act[14] then provided that: "Every agency shall proceed with reasonable dispatch to conclude any matter presented to it . . . ."

---

12. After substantial completion of this opinion, but prior to filing, it came to the attention of the Court that on April 3, 1975, the State of North Carolina filed notice of appeal from the F.P.C. "Order Denying Motion for Stay" in the United States Court of Appeals for the District of Columbia Circuit. This action further comforts the Court in the knowledge that plaintiffs' cause will not go wanting for an appropriate forum.

13. 5 U.S.C. § 703. *Form and venue of proceeding*

The form of proceeding for judicial review is the special statutory review proceeding relevant to the subject matter in a court specified by statute or, in the absence or inadequacy thereof, any applicable form of legal action, including actions for declaratory judgments or writs of prohibitory or mandatory injunction or habeas corpus, in a court of competent jurisdiction. Except to the extent that prior, adequate, and exclusive opportunity for judicial review is provided by

law, agency action is subject to judicial review in civil or criminal proceedings for judicial enforcement.

5 U.S.C. § 704. *Actions reviewable*

Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review. A preliminary, procedural, or intermediate agency action or ruling not directly reviewable is subject to review on the review of the final agency action. Except as otherwise expressly required by statute, agency action otherwise final is final for the purposes of this section whether or not there has been presented or determined an application for a declaratory order, for any form of reconsideration, or, unless the agency otherwise requires by rule and provides that the action meanwhile is inoperative, for an appeal to superior agency authority.

14. This section of the Act is now codified as 5 U.S.C. § 555(b), and the language quoted has been amended significantly.

Section 10(e) of the Act [15] provided that: "The reviewing court shall—(A) compel agency action unlawfully withheld or unreasonably delayed; . . ." At the same time, Section 10(f) of the National Labor Relations Act, 29 U.S.C. § 160(f), provided for exclusive review of N.L.R.B. orders in the court of appeals. As can be seen from the following quotation, the logic and holding of *Deering Milliken* has no applicability to the facts of the present case.

"The Board contends, however, that the provisions of § 10(e) and (f) of the National Labor Relations Act provide methods of reviewing final orders of the Board which are exclusive. The existence of the particular method of review is said to foreclose resort to the general jurisdiction of the district courts.

"*This contention has validity only so long as the particularized method of review is adequate for the protection of the asserted statutory right. The case would present no problem if review of Board action under § 10(f) of the National Labor Relations Act was adequate and appropriate for enforcement of the plaintiff's right to have the Board conclude these proceedings with reasonable dispatch.* The Administrative Procedure Act in § 10(b) specifically provides that other remedies are available only when a 'special statutory review proceeding' is not available or is inadequate. If the § 10(f) proceeding under the National Labor Relations Act is inadequate to protect the plaintiff's right, however, the district court had jurisdiction to enforce the right." [Emphasis added] 295 F.2d 856, 864.

In United Gas Pipe Line Co. v. Federal Power Commission, 86 U.S.App.D.C. 314, 181 F.2d 796 (1950), the issue was the jurisdiction of the Court of Appeals under the exclusive jurisdiction statute of the Natural Gas Act, 15 U.S.C. § 717r (b), to entertain a challenge to newly adopted regulations concerning natural gas rates. The Court of Appeals held it had no jurisdiction because the order was a regulation promulgated under the Commission's rule making power, and not one arising out of a judicial, or quasi-judicial decision making process producing a reviewable record. Therefore, the order under attack did not come within the exclusive jurisdiction provisions of 15 U.S.C. § 717r(b).

Elmo Division of Drive-X Company v. Dixon, 121 U.S.App.D.C. 113, 348 F.2d 342 (1965) is also of no help to plaintiffs. In *Elmo* the Federal Trade Commission and plaintiff had entered into a consent decree with regard to a cease and desist order. Several years later, the F.T.C. initiated a second new proceeding against plaintiff in a manner directly violating the previous consent decree. The Court of Appeals held that the District Court had jurisdiction to enjoin the F.T.C., because there was no final order for the Court of Appeals to review, pursuant to an exclusive review provision, thus plaintiff would otherwise be without an adequate remedy. "We hold that the unavailability of other adequate relief justifies the issuance of an injunction against the new complaint proceeding upon a proper showing." 348 F.2d 342, 347.

The most persuasive authority which plaintiffs have brought to the Court's attention is Izaak Walton League of America v. Schlesinger, 337 F.Supp. 287 (D.C.1971). Nevertheless, a close reading of this case reveals the same underlying distinctions found in the previously discussed cases. In *Izaak Walton*, the plaintiffs were challenging the authority of the Atomic Energy Commission to issue a permit at a future date, without first preparing an environmental impact statement as required by the National Environmental Policy Act, 42 U.S.C. § 4321 et seq. There was, therefore, no final order susceptible of review under the applicable exclusive

15. This section has been recodified as 5 U.S.C. § 706, with insignificant amendment to the language quoted.

jurisdiction review statutes, 28 U.S.C. § 2342(4) and 42 U.S.C. § 2239(a). In the instant proceeding, however, there are final orders of the F.P.C. currently pending appeal before a Court of Appeals with unquestioned jurisdiction. This distinction was crucial in the *Izaak Walton* case, because plaintiffs there were not parties to the Atomic Energy Commission proceedings and the Court was obviously uncertain that they would be allowed to intervene.

"Review in the Court of Appeals is unavailable or inadequate to protect plaintiffs' rights. Does the law, apart from the review provisions investing exclusive jurisdiction in the court of appeals, afford a remedy? This Court observes that plaintiffs lack an adequate remedy since appellate review is only available to parties to the proceeding.

\* \* \* \* \* \*

"That the plaintiffs 'may' be allowed to intervene is speculative at best. The standard the Court would observe if plaintiffs were denied intervention would be whether the AEC abused its discretion in denying the untimely application by plaintiffs. Review of discretionary acts is more limited than agency actions that are compelled by statute. If plaintiffs' request to become parties before the AEC was denied their cry of failure to comply with NEPA would be unadjudicated. *Therefore, the Court may never be afforded opportunity to pass on the*

*issue of whether the AEC failed to comply with the statutory mandate of NEPA.* See Skinner & Eddy Corp. v. United States, 249 U.S. 557, 39 S.Ct. 375, 63 L.Ed. 772 (1919). *Review under 28 U.S.C. § 2342 therefore appears inadequate."* [Emphasis added] 337 F.Supp. 287, 291–293.

 In the present action, there are several individual plaintiffs, owners of land which will have to be taken if the Modified Blue Ridge Project proceeds, who were not parties before the administrative proceedings of the F.P.C. They contend that they, like the plaintiffs in *Izaak Walton*, must be allowed to litigate their claim in the District Court because they will not be allowed to intervene in the Court of Appeals. This is a specious analogy. Although it is true they will not be allowed to intervene in the Court of Appeals, Easton Utilities Commission v. A.E.C., 137 U.S.App.D.C. 359, 424 F.2d 847 (1970), the interests of the individual plaintiffs have not been, nor will they be, unrepresented.[16] The State of North Carolina, a party to the F.P.C. proceedings, and the individual plaintiffs make exactly the same claims and contentions in this action. They even share the same counsel and have joined in all pleadings—for purposes of representing the Wild and Scenic Rivers Act claim, the State of North Carolina and the individual plaintiffs are identical. Plainly, the situation of the individual plaintiffs in this action is a far cry from that facing the Izaak

---

16. The following is a list of parties represented before the F.P.C.: Appalachian Power Company; Ashe and Alleghany Counties, North Carolina; North Carolina Electric Membership Corporation; Blue Ridge Electric Membership Corporation; Harrison (County) Rural Electric Association; City of Danville, Virginia; Department of Conservation and Economic Development, Commonwealth of Virginia; Old Dominion Electric Cooperative; Mecklenburg Electric Cooperative; Sprague Electric Company; State of North Carolina; Washington Mills Company; Conservation Council of Virginia, Inc.; Grayson County, Virginia; Alleghany Farm Bureau; North Carolina Farm Bureau; State of West Virginia; Congress for Ap-

palachian Development; Appalachian Research and Defense Fund; Commonwealth of Virginia; West Virginia Natural Resources Council, Inc.; Izaak Walton League; Environment Protection Agency; Izaak Walton League of America, West Virginia Division; West Virginia Department of Natural Resources; and the Upper New River Development Association. This list was derived from the list of appearances in F.P.C. Opinion No. 698, June 14, 1974. It is observed that not only was co-plaintiff, the State of North Carolina, represented, but also several environmental interest groups seeking to preserve the present status of the New River were present.

Walton League in Izaak Walton League of America v. Schlesinger, *supra.*

The Supreme Court had an opportunity to discuss § 313(b) of the Federal Power Act, 16 U.S.C. § 825*l*(b) in City of Tacoma v. Taxpayers of Tacoma, 357 U.S. 320, 78 S.Ct. 1209, 2 L.Ed.2d 1345 (1958), a case relied upon by defendants. In *City of Tacoma,* the municipality of Tacoma, Washington, was granted a license to build a hydroelectric project by the F.P.C. The State of Washington vigorously opposed the licensing of the project before the F.P.C. and the Court of Appeals for the Ninth Circuit, but the license was upheld and certiorari was denied by the Supreme Court. While the license was on appeal to the Court of Appeals, the City of Tacoma, pursuant to state statutes, sued the taxpayers of the City of Tacoma and the State Directors of Fisheries and Game for a judgment declaring valid a large issue of revenue bonds issued by the City of Tacoma to finance the hydroelectric project. The State again asserted substantially the same objections that it had made before the F.P.C. and the Court of Appeals. After substantial litigation, the Supreme Court of Washington rendered a decision in favor of the State, and at odds with the F.P.C. Order and the decision of the Court of Appeals.

In its opinion reversing the Supreme Court of Washington, the Court analyzed the meaning and intent of § 313(b).

"This statute is written in simple words of plain meaning and leaves no room to doubt the congressional purpose and intent. It can hardly be doubted that Congress, acting within its constitutional powers, may prescribe the procedures and conditions under which, and the courts in which, judicial review of administrative orders may be had. Cf. Labor Board v. Cheney California Lumber Co., 327 U.S. 385, 388 [66 S.Ct. 553, 554, 90 L.Ed. 739]. So acting, Congress in § 313(b) prescribed the specific, complete and exclusive mode for judicial review of the Commission's orders. Safe Harbor Water Power Corp. v. Federal Power Comm., 3 Cir., 124 F.2d 800, 804, certiorari denied, 316 U.S. 663 [62 S.Ct. 943, 86 L.Ed. 1740]. It there provided that any party aggrieved by the Commission's order may have judicial review, upon all issues raised before the Commission in the motion for rehearing, by the Court of Appeals which 'shall have exclusive jurisdiction to affirm, modify, or set aside such order in whole or in part,' and that '[t]he judgment and decree of the court, affirming, modifying, or setting aside, in whole or in part, any such order of the Commission, *shall be final,* subject to review by the Supreme Court of the United States upon certiorari or certification . . . .' (Emphasis added.) It thereby necessarily precluded *de novo* litigation between the parties of all issues inhering in the controversy, and all other modes of judicial review. Hence, upon judicial review of the Commission's order, all objections to the order, to the license it directs to be issued, and to the legal competence of the licensee to execute its terms, must be made in the Court of Appeals or not at all." 357 U.S. 320, 335–336, 78 S.Ct. 1209, 1218, 2 L.Ed.2d 1345.

Plaintiffs contend that *City of Tacoma* is not relevant because it was decided prior to Leedom v. Kyne, *supra,* and was, in effect, nothing more than an attempted relitigation of issues previously determined by the Court of Appeals. The fact that *City of Tacoma* was decided prior to Leedom v. Kyne is irrelevant since the principle of *Leedom* would have no application to the facts of *City of Tacoma* if the case were brought today. Moreover, the present action is no less a relitigation of issues previously decided by the Court of Appeals than was *City of Tacoma;* both arose in actions initiated during the pendency of an appeal of an F.P.C. Order to a Court of Appeals. *See* 357 U.S. 320, 329, 78 S.Ct. 1209, 2 L.Ed.2d 1345. Despite the

**1128**

fact that the Court of Appeals for the District of Columbia Circuit has not yet decided No. 74–1941, the following statement from *City of Tacoma* is appropriate:

"We think these recitals show that the very issue upon which respondents stand here was raised and litigated in the Court of Appeals and decided by its judgment. But even if it might be thought that this issue was not raised in the Court of Appeals, it cannot be doubted that it could and should have been, for that was the court to which Congress had given 'exclusive jurisdiction to affirm, modify, or set aside' the Commission's order. And the State may not reserve the point, for another round of piecemeal litigation, by remaining silent on the issue while its action to review and reverse the Commission's order was pending in that court—which had 'exclusive jurisdiction' of the proceeding and whose judgment therein as declared by Congress 'shall be final,' subject to review by this Court upon certiorari or certification." 357 U.S. 320, 339, 78 S.Ct. 1209, 1220, 2 L.Ed. 2d 1345.

In their oral argument and throughout their briefs, plaintiffs repeatedly make the point that they are not seeking a review of the F.P.C. license in this Court, rather they are seeking review of F.P.C. action under the Wild and Scenic Rivers Act. In the final analysis, it is this distinction which breaks down under scrutiny. Could not the same argument have been made by the State of Washington in City of Tacoma v. Taxpayers of Tacoma? And, if plaintiffs are correct, could not each and every affected landowner bring a separate suit for the enforcement of rights under the Wild and Scenic Rivers Act or the National Environmental Policy Act in both this Court or the District Court for the Western District of Virginia? What then would become of section 313(b) of the Federal Power Act? What then would we do with those "simple words of plain meaning [which] leave[s] no room to doubt the congressional purpose and intent"? City of Tacoma v. Taxpayers of Tacoma, 357 U.S. 320, 335–336, 78 S.Ct. 1209, 1218, 2 L.Ed.2d 1345. Clearly, the exceptions to section 313(b) and other like statutes are narrow, Boire v. Greyhound Corp., 376 U.S. 473, 84 S.Ct. 894, 11 L.Ed.2d 849 (1964); United States v. Feaster, 410 F.2d 1354 (5th Cir. 1969); the appropriate course will most frequently lead to the Court of Appeals. *See e. g.*, Greene County Planning Board v. Federal Power Commission, 455 F.2d 412 (2nd Cir. 1972).

Accordingly, in harmony with the foregoing views, an Order will be entered dismissing the complaint in this action. Said Order will obviously dispose of Virginia's motion to intervene.